918 P.2d 714

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Ventura MANZANARES, Defendant–Appellee.**

No. 23267.

Supreme Court of New Mexico.

May 20, 1996.

Tom Udall, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellant.

T. Glenn Ellington, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Appellee.

## OPINION

RANSOM, Justice.

1. The State appealed to the Court of Appeals from the district court's dismissal of criminal proceedings against Ventura Manzanares for violation of his right to a speedy trial. The district court had concluded that because almost eleven months passed since the indictment of Manzanares, his right to a speedy trial was presumptively violated. The Court of Appeals deemed the appeal to present a significant question of law under the New Mexico Constitution, namely whether this Court's grant of an extension of time for trial beyond the six-month limit of SCRA 1986, 5–604 (Repl.Pamp.1992) prohibits a lower court from reviewing a claim of violation of the right to a speedy trial. The Court of Appeals consequently certified the appeal to this Court pursuant to NMSA 1978, Section 34–5–14(C)(1) (Repl.Pamp.1990) and SCRA 1986, 12–606 (Repl.Pamp.1992). We hold that the grant of an extension by this Court does not preclude a lower court's re-

view of the right to speedy trial, and the district court's findings being supported by substantial evidence, we weigh those findings de novo, *see Zurla v. State,* 109 N.M. 640, 642, 789 P.2d 588, 590 (1990), and we affirm the ruling of the district court.

2. *Proceedings.* On August 13, 1993, Manzanares was involved in a head-on automobile collision that resulted in the death of Stacy Kern Hill. On November 8, the Rio Arriba County grand jury indicted Manzanares on charges of vehicular homicide, driving while intoxicated, and driving recklessly. Manzanares was arraigned and released on December 2, 1993. The arraignment started the six-month period within which Rule 5–604 provides that trial must be commenced. The trial was set for April 11, 1994. Due to an insufficient juror pool, the April 11 trial date was vacated. On April 19, the State filed for a Rule 5–604 extension from the district court, seeking an extension to November 2, 1994. The Supreme Court has given the district court power to grant extensions of up to four months. This would have allowed the district court to grant an extension to October 2, not November 2. However, on May 23 the district court purported to grant an extension to November 2.

3. At a hearing on April 28, the district court entered an order setting the trial for August 8. The court noted that there was an extension in the case until November 2, even though the grant of that extension was not entered of record until May 23. Manzanares objected to the August court date and requested that the trial be set for an earlier date. The trial was then scheduled for May 31. At a pretrial conference on May 13, the court suggested that the trial be set for early June, but the parties were unable to agree on a date. On May 25, two days after the order granting the November 2 extension was entered, the district court set October 3 as the date for jury trial. October 3 was one day beyond the four-month-extension period that was within the power of the district court to grant. On August 17, the State filed a petition with this Court requesting an extension. Defense counsel was apparently on vacation at this time, and the petition incorrectly stated that Manzanares had stipulated to the extension. We granted an extension to November 11. Manzanares petitioned this Court for reconsideration, and we denied the motion.

4. On August 22, before we had granted the extension and before he was even aware that the State's petition had been submitted to us or, apparently, that the district court had entered an extension order, Manzanares moved to dismiss the indictment against him on grounds that the district court no longer had jurisdiction. A hearing was held on this motion on September 26, the date that we denied Manzanares's motion for reconsideration. The court, noting our decision, denied the motion to dismiss. Manzanares specifically raised the issue of speedy trial and on September 29 he filed another motion to dismiss, citing his right to a speedy trial. This motion was denied on October 3, on grounds that the court was without authority to "overrule" the Supreme Court's extension and dismiss the action. Manzanares moved for reconsideration, and the court granted the motion to dismiss on October 6. Specifically, the court found that the granting of an extension by the Supreme Court, without a showing that the Court expressly considered speedy-trial issues, did not preclude review of speedy-trial claims by lower courts. The court found the case to be a "simple" one and held that the eleven-month delay from indictment to trial was in violation of Manzanares's right to a speedy trial.

5. *Issues.* This appeal presents us with two issues. First, does the grant of an extension by the Supreme Court pursuant to Rule 5–604 preclude a lower court from subsequently reviewing speedy-trial claims by the criminal defendant? Second, was dismissal for violation of constitutional speedy-trial rights proper in this case?

■ 6. *Rule 5–604 extensions.* The State argues that our grant of an extension under Rule 5–604 was an implicit finding by this Court that Manzanares's right to speedy trial had not been violated. This is a mischaracterization of the role of the Court in the grant of extensions, and a misreading of Rule 5–604, which is not intended or designed as an implementation of the constitutional right to speedy trial. *See, e.g., State v. Mendoza,*

108 N.M. 446, 450, 774 P.2d 440, 444 (1989) ("[W]e should avoid engrafting principles of constitutional analysis onto the operation of the rule." Ransom, J., specially concurring). The rule is a case-management tool and only incidentally may its implementation turn on factors determinative of constitutional rights. This Court annually considers well in excess of 1000 petitions for rule extensions. Signed stipulations for extensions are seldom, if ever, questioned. When the nonmoving party is said to concur, or simply enters no written objection to a petition, we will set the shortest period of extension consistent with the circumstances, mindful of the apparent complexity of the case. We nonetheless expect, whether the extension is granted under stipulation or concurrence, express or tacit, that the court will proceed expeditiously with trial. The limit on an extension is not the target for a trial. Where a written objection is interposed, we consider the merits of the request—with little regard for "press of other business" or "congested court dockets," it being the resolution of such conflicts in a manner compatible with the rule that we wish to encourage—and we rule accordingly, often seeking from the trial court an early definite setting on which to base an extension. We do not resolve factual issues, and ordinarily we would not weigh the factors implicated in constitutional speedy-trial analysis.

7. An appropriate motion to protect constitutional speedy-trial rights, requiring the weighing of factors that are factually based, must be presented in the first instance to the trial court and not to this Court under Rule 5–604. We affirm *State v. Garcia*, 110 N.M. 419, 422, 796 P.2d 1115, 1118 (Ct.App.), *cert. denied*, 110 N.M. 282, 795 P.2d 87 (1990), to the effect that our ruling on a Rule 5–604 motion is not determinative of a subsequent speedy-trial motion except in the unlikely event the record specifically reflects our analysis and decision on the issue being raised again below. Therefore, we affirm the order of the district court as it relates to the effect of Rule 5–604 extensions on a lower court's subsequent review of speedy-trial claims.

■ 8. *The right to a speedy trial.* The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. As we noted in *Salandre v. State,* 111 N.M. 422, 806 P.2d 562 (1991), the right attaches "when the putative defendant becomes an 'accused,'" and this occurs when there is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Id.* at 425, 806 P.2d at 565 (quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)). We have set forth guidelines, as a matter of public policy, for determining whether delay should be deemed "presumptively prejudicial" in different types of cases. *Id.* at 428, 806 P.2d at 568. In determining whether the right to speedy trial has been violated, a reviewing court must apply the four-factor balancing test from *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). The four factors of this test are the "(1) length of delay, (2) reasons for the delay, (3) assertion of the right, and (4) prejudice to the defendant." *Salandre,* 111 N.M. at 425, 806 P.2d at 565. If the delay is found to be presumptively prejudicial, then the state bears the burden to show that the *Barker* factors do not weigh in favor of dismissal. *Zurla,* 109 N.M. at 646, 789 P.2d at 594. While the defendant's stipulation or concurrence that an extension be granted under Rule 5–604, on the one hand, or, on the other hand, the defendant's objection to any such delay, would constitute persuasive evidence of the reason for the delay and the assertion of the right to speedy trial, such factors would not necessarily be conclusive to the exclusion of the factors of length of delay and actual prejudice.

■ 9. *Presumptive prejudice.* The guidelines set forth in *Salandre* for what constitutes presumptively prejudicial delay in cases of various complexity are found at footnote 3:

> We are of the opinion that nine months marks the minimum length of time that may be considered presumptively prejudicial, even for a case such as this involving

simple charges and readily-available evidence.... We believe that for complex cases a period of fifteen months after the defendant becomes an 'accused' should provide adequate time for the state to marshall its resources and proceed to trial. Accordingly, we believe trial courts should treat delay of fifteen or more months in such cases as requiring further inquiry. Twelve months for cases of intermediate complexity would be appropriate.

111 N.M. at 428, 806 P.2d at 568. The question of the complexity of a case is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities. The determination of complexity is, of course, not a determination of the importance of the case to the defendant, to the victim, or to society. The district court found this important case of vehicular homicide to be a "simple case," thus making the delay presumptively prejudicial after nine months. The factual findings of the district court are supported by substantial evidence, and, because we give due deference to the findings, we conclude that the delay in this case was presumptively prejudicial to Manzanares, and we look to the factors from the *Barker* test.

■ 10. The district court found that the *Barker* factors balanced in favor of dismissal. The reason for most of the delay in the case, the district court found, was attributable to actions of the state or to neutral factors like congestion of the court docket. The court also found that Manzanares "timely and vigorously asserted the right to speedy trial." Also, the court found that Manzanares was particularly prejudiced by the delay because an "important" witness had moved to Idaho during the interim, and an expert witness, who had been prepared twice for trial, would have to provide only deposition testimony because of scheduling conflicts. In balancing the *Barker* factors, the court held that "the evils of delay ... [worked] not only to the Defendant's prejudice but to the detriment of the court's goal for prompt justice." Again, we find the factual findings of the district court are supported by substantial evidence,

and we agree with the court's weighing of the *Barker* factors. Therefore, we affirm the dismissal for violation of Manzanares's right to a speedy trial.

11. *Conclusion.* We affirm the district court with regard to the affect of a Rule 5–604 extension on lower court review of speedy trial claims. We also affirm the district court's dismissal of the action as a violation of Manzanares's constitutional right to a speedy trial.

12. **IT IS SO ORDERED.**

FROST, C.J., and BACA, FRANCHINI and MINZNER, JJ., concur.