950 P.2d 811

STATE of New Mexico, Plaintiff–Appellee,

v.

Kenneth TORTOLITO, Defendant–Appellant.

No. 17338.

Court of Appeals of New Mexico.

Oct. 21, 1997.

Certiorari Denied Dec. 15, 1997.

Tom Udall, Attorney General, Steven S Suttle, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Robert E. Tangora, Tangora & Whitley, P.C., Santa Fe, for Defendant–Appellant.

### OPINION

ARMIJO, Judge.

1. Defendant appeals from the trial court's decision to increase his sentence because of aggravating circumstances and the denial of his motions to dismiss based on his constitutional right to a speedy trial. Balancing the four factors articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we determine that Defendant's constitutional right to a speedy trial was not violated by delays which are largely attributable to the collection and scientific analysis of DNA evidence. We also affirm the trial court's decision to increase Defendant's sentence for criminal sexual penetration because of aggravating circumstances.

### I. BACKGROUND

2. Defendant was arrested on May 27, 1994, on charges of aggravated burglary, criminal sexual penetration (CSP), criminal sexual contact, kidnapping, armed robbery and child abuse. All of the charges relate to an incident in which Defendant entered a neighbor's apartment armed with a knife, bound and blindfolded the victim, forced her to perform sex acts, and then stole money from her. The victim's two small children were present during the incident, thus giving rise to the child abuse charges.

3. As part of its investigation of the incident, the State collected DNA samples from the crime scene and compared them with samples of Defendant's DNA. During the pendency of the scientific analysis of the samples collected during this investigation, Defendant filed motions to dismiss alleging that his constitutional right to a speedy trial was violated. The trial court denied these motions, finding that Defendant's case "falls in the high end of the intermediately complex range," and that the majority of the delay was attributable to the "processing of the scientific evidence, specifically the DNA

...." The trial court concluded that there were "acceptable good reasons for the delay" because: (1) "[t]he case load at the Albuquerque Police Department lab does not allow for immediate attention to any case, and this case took its place within the priorities of the lab's schedule"; and (2) there was a serial rape investigation that "had priority in the lab and while it was being worked, [Defendant's] DNA was compared to either include or exclude him as a possible match."

4. Almost eighteen months after the date of his arrest, Defendant reached a plea agreement with the State under which he entered pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), on the charges of aggravated burglary, armed robbery, and CSP in the second degree, but expressly reserved the right to appeal the trial court's denial of his motions to dismiss on speedy trial grounds. Defendant's plea agreement also expressly permitted the State to seek enhancement of Defendant's sentence because of aggravating factors.

5. The State filed its notice of intent to seek aggravation of Defendant's sentence in open court during Defendant's sentencing hearing. The trial court increased Defendant's sentence for CSP by three years on the grounds that "there are sufficient facts that raised it from the level of a simple [CSP] to one of terror, and that is placing the pillow case over her head, and the children being present at the time ...." This appeal followed.

### II. DISCUSSION

A. *Constitutional Right to a Speedy Trial*

■ 6. In *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, the United States Supreme Court determined whether a defendant's constitutional right to a speedy trial was violated by balancing four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant that resulted from the delay. New Mexico follows this four-factor balanc-

ing test. *See State v. Manzanares,* 121 N.M. 798, 800, 918 P.2d 714, 716 (1996). In considering each of the four factors, we are deferential to the trial court's fact finding but independently examine the record to determine whether Defendant's constitutional right to a speedy trial was violated. *See State v. Gallegos,* 109 N.M. 55, 63, 781 P.2d 783, 791 (Ct.App.1989).

### 1. *Length of Delay*

■ 7. The first factor in the *Barker* analysis is the length of the delay, which in this case amounted to almost eighteen months. We defer to the trial court's determination of the level of complexity this case presented. *See Manzanares,* 121 N.M. at 801, 918 P.2d at 717. However, even for a complex case, an eighteen-month delay is presumptively prejudicial. Although New Mexico appellate courts have not specifically addressed the effect of DNA testing on pretrial delay, the New Mexico Supreme Court has endorsed the general proposition that a fifteen-month delay is presumptively prejudicial even in a case with a high level of complexity. *Id.* at 800–01, 918 P.2d at 716–17 (citing *Salandre v. State,* 111 N.M. 422, 428, 806 P.2d 562, 568 (1991)). Therefore, we conclude that the length of delay in this case is presumptively prejudicial, and the burden shifts to the State to prove that the remaining *Barker* factors weigh in its favor. *Salandre,* 111 N.M. at 425, 427–28, 806 P.2d at 565, 567–68.

### 2. *Reasons for Delay*

8. Analysis of the second *Barker* factor involves allocating the reasons for the delay to each side and determining the weight attributable to each reason. *See State v. Kilpatrick,* 104 N.M. 441, 445, 722 P.2d 692, 696 (Ct.App.1986). We begin by dividing the delay into three periods: (1) the period from the date of Defendant's arrest on May 27, 1994, until the State's crime lab began its analysis of the scientific evidence collected from the crime scene on October 4, 1994; (2) the period from October 4, 1994, until the time when Defendant requested a continuance of trial based on late discovery of hair or DNA in September 1995; and (3) the

period from September 1995 until the filing of Defendant's plea agreement with the State on November 16, 1995.

■ 9. From May 27, 1994, when Defendant was arrested, until October 4, 1994, when the crime lab began its scientific analysis of the evidence collected from the crime scene, there were delays attributable in part to a backlog of other cases on which the crime lab had begun work prior to Defendant's arrest. We do not condone the backlog delay. Insofar as it was not deliberate, it does not weigh heavily against the State. However, it does weigh against the State, as the State should not be entitled to a grace period. "A neutral reason, such as negligence or extensive caseload, 'should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* at 445, 722 P.2d at 696 (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192). The remaining delay attributable to the State's comparison of Defendant's DNA with samples collected in an otherwise unrelated serial rape investigation is not a determinative factor in this case because the record shows that only "four or five days" during this period were spent on actually preparing Defendant's DNA sample for inclusion in the DNA comparison.

10. During the second period running from the beginning of the crime lab analysis in October 1994 to Defendant's requested continuance of trial in September 1995, there were delays attributable to the State's scientific testing of the evidence, primarily the DNA. Other courts that have analyzed the issue have been sympathetic to the need for extended periods of time for testing DNA evidence. *See Hull v. State,* 687 So.2d 708, 729–30 (Miss.1996) (delay in testing DNA evidence weighed only slightly against state); *State v. Davis,* 903 S.W.2d 930, 936 (Mo.Ct. App.1995) (delay in testing DNA evidence did not weigh heavily against state); *Lazcano v. State,* 836 S.W.2d 654, 657 (Tex.Ct.App. 1992) (fourteen-month delay attributed in part to DNA testing was not presumptively prejudicial); *cf. People v. Fredericks,* 157 Misc.2d 822, 598 N.Y.S.2d 682, 685 (Sup.Ct.

1993) (state justified in delaying DNA testing during plea negotiations because testing is expensive, complicated and time-consuming); *Smith v. Deppish,* 248 Kan. 217, 807 P.2d 144, 150 (1991) (length of delay not unreasonable because DNA profiling analysis required extensive testing time); *State v. Stroud,* 459 N.W.2d 332, 335 (Minn.Ct.App.1990) (trial court abused its discretion in denying reasonable continuance to allow for DNA testing).

11. We find at least two possible rationales for this sympathetic treatment of pretrial delays caused by DNA testing. First, allowing additional time for DNA testing may increase the likelihood that such testing will produce an accurate result. *Cf.* 2 Paul C. Giannelli & Edward J. Imwinkelried, *Scientific Evidence* §§ 18–4(A), 18–5(B) (2d ed.1993) (describing errors that may result from improper DNA testing procedures and noting cases in which courts have required proof that proper DNA testing procedures were used). In this case, there was evidence that part of the delay was attributable to the crime lab's decision to repeat certain steps in its DNA testing procedure in order to obtain a more accurate and reliable result.

█ 12. A second rationale is that DNA evidence is obtained in part for a defendant's benefit because accurate analysis of such evidence ultimately may exculpate that defendant. *See Hull,* 687 So.2d at 730; *Springfield v. State,* 860 P.2d 435, 452–53 (Wyo. 1993). In some cases it is the defendant who requests the DNA testing and is later precluded from challenging pretrial delays caused by this request. *See, e.g., White v. State,* 301 Ark. 74, 781 S.W.2d 478, 480–81 (1989). We agree that the analysis of DNA evidence ultimately may result in a benefit to the defendant in some cases. However, we also acknowledge that where the results of such potentially exculpatory DNA testing are subject to unreasonable delays because of the State's negligence or wilfully oppressive conduct, such delays may weigh heavily against the State notwithstanding any possible ultimate benefit to the defendant. *See State v. Anderson,* 640 So.2d 1061, 1063–64 (Ala. Crim.App.1994).

█ 13. Although Defendant did not request the DNA tests in the present case, he did testify that he was confident that the DNA evidence, when reviewed by a defense expert, would exculpate him. In addition, the record does not show that the State was negligent or wilfully oppressive in the conduct of its DNA investigation. Rather, it appears that the DNA and other evidence requiring scientific analysis was tested in its normal order of priority in the State's crime lab, and this testing was prolonged in part by the small size of the DNA samples collected from the crime scene. For these reasons, we weigh this period of delay attributable to the DNA testing against the State, but not heavily.

14. The remaining two-month delay that occurred after the State turned over the results of DNA and other scientific testing can be attributed to Defendant's stated need for extra time to obtain a defense expert and have that expert review this evidence. Because of this need for a defense expert, Defendant asked that the trial date be moved back two months and concurred in the State's fourth petition for an extension of time under Rule 5–604. The delay during this final two-month period weighs slightly against Defendant.

### 3. *Assertion of Right*

15. The third factor in the *Barker* analysis requires us to assign weight to Defendant's assertion of his right to a speedy trial. *See Kilpatrick,* 104 N.M. at 445, 722 P.2d at 696. During a hearing on his third motion to review conditions of release, Defendant himself briefly alluded to Rule 5–604 by stating that: "it says in the law of New Mexico that ... the [d]efendant should be brought to a speedy trial within six months." However, Defendant did not specifically assert his constitutional right to a speedy trial or specifically invoke a ruling on the issue of whether this right was violated until the hearing on Defendant's fourth motion to review conditions of release on May 11, 1995, at which time Defendant's trial counsel indicated she would be filing a separate, speedy trial motion. The issue was then raised in Defendant's second motion to dismiss filed on May 18, 1995, approximately one year after Defendant's arrest.

16. At the hearing on Defendant's second motion to dismiss, Defendant's trial counsel argued that Defendant's motions to review conditions of release should be treated as invoking his right to a speedy trial. However, we find that the arguments raised in support of Defendant's motions to review conditions of release were not sufficient to fairly invoke a specific ruling on Defendant's constitutional right to a speedy trial. *Cf. State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (timely and specific objection that invokes intelligent ruling on issue is required to preserve issue for review on appeal). As other courts have noted, "it may very often be the case that a defendant desires immediate release from confinement, yet is not at all in a hurry to be tried." *Graves v. United States*, 490 A.2d 1086, 1099 (D.C.1984); *see also Lyons v. United States*, 683 A.2d 1080, 1085 (D.C.1996) (declining to give weight to conclusory request for speedy trial raised in motion to review conditions of release). For this reason, we will not presume that a motion to review conditions of release implicitly asserts a defendant's right to a speedy trial.

17. Defendant did not specifically invoke a ruling on his constitutional right to a speedy trial until he moved to dismiss the case almost one year after he was arrested. *Cf. Hull*, 687 So.2d at 730 (third *Barker* factor given less weight when defendant "did not request a speedy trial, but only moved to dismiss for a denial of a right to a speedy trial"); *Lyons*, 683 A.2d at 1085 (assertion of right given less weight when defendant fails to move for a prompt trial as an alternative to dismissal). Indeed, Defendant indicated some willingness to wait for the defense expert's analysis of the DNA evidence in the hope that it would exculpate him. Therefore, Defendant's late assertion of his right to a speedy trial does not weigh significantly in his favor.

### 4. Prejudice to Defendant

18. The fourth factor in the *Barker* analysis requires us to determine the prejudice to Defendant caused by the delay. *See Kilpatrick*, 104 N.M. at 445, 722 P.2d at 696. Defendant claims he was prejudiced by the delay because he spent the entire eighteen-month period in jail, suffered from great anxiety and concern during this period because of the severe conditions under which he was incarcerated, and was impaired in locating a transient whom he claimed was an alibi witness. While we do not discount the fact that the State kept Defendant in pretrial detention during the entire eighteen-month period between the date of his arrest and the date of his plea agreement, we believe that Defendant also must bear some of the responsibility for the hardships he underwent because of the severe conditions under which he was incarcerated during this period.

19. It was Defendant himself who requested to be put in a protective-custody situation where his ability to maintain contacts with friends and family was limited. Defendant testified that he decided to put himself in 23–hour lockdown so that he wouldn't have to "put [up] with all the bull." *Cf. Salandre*, 111 N.M. at 430, 806 P.2d at 570 (claims of anxiety and concern accorded lesser weight when they arose from defendant's parole status).

20. Finally, Defendant must accept responsibility for any impairment of his defense caused by his late identification of a potential alibi witness. Although the State filed a demand for notice of Defendant's intent to claim an alibi on August 17, 1994, Defendant did not respond to this notice until August 25, 1995, more than one year later. Defendant stated that his alleged alibi witness is a transient, with no fixed address or phone number. Defendant failed to establish that any prejudice to him caused by the failure to locate his alibi witness was due to any reason other than the small quantity of information that he provided about this witness and the late date on which he provided it. The fourth factor in the *Barker* balancing test weighs against Defendant. *Cf. Davis*, 903 S.W.2d at 937 (lack of actual prejudice to defendant's ability to make a defense is of greater importance than prejudice caused by anxiety and concern).

21. Although none of the four factors weighs heavily in either side's favor under our analysis, we conclude that the reasons for the State's delay in analyzing the DNA

evidence, the late assertion of Defendant's constitutional right to a speedy trial, and, most importantly, the lack of any actual impairment of Defendant's ability to make a defense caused by this delay, are sufficient to outweigh the presumption of prejudice that arises from the length of the delay. Therefore, we affirm the district court's conclusion that Defendant's constitutional right to a speedy trial was not violated in this case.

### B. Enhancement of Sentence for Aggravating Circumstances

22. Defendant asserts that even if we do not reverse his conviction on speedy trial grounds, we should reverse and remand for resentencing because the State did not give Defendant adequate notice of its intent to seek aggravation of Defendant's sentence under NMSA 1978, Section 31–18–15.1 (Repl. Pamp.1994). We agree that requiring such notice "is fundamental to due process and applies whether or not the state is required to allege and prove a specific fact before the sentence may be enhanced." *Caristo v. Sullivan,* 112 N.M. 623, 631, 818 P.2d 401, 409 (1991). However, in this case, Defendant fails to show how he was prejudiced by the State's late filing of its written notice. *See State v. Wright,* 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (in order to be reversible, error must be prejudicial).

23. The State reserved the right to seek aggravation of Defendant's sentence in its plea agreement with Defendant and filed a written notice of its intent to do so in open court during Defendant's sentencing hearing just one month later. The trial court increased Defendant's sentence for CSP by three years because of aggravating circumstances. This three-year increase is within the range allowed by Section 31–18–15.1(C), and the transcript of the sentencing hearing contains a statement of the trial court's reasons for aggravating Defendant's sentence, as required by Section 31–18–15.1(A). *See State v. Bernal,* 106 N.M. 117, 119, 739 P.2d 986, 988 (Ct.App.1987). The specific aggravating factors presented by the State and relied upon by the trial court in its decision to enhance Defendant's sentence were that: (1) the offense was committed in the presence of the victim's two small children; and (2) Defendant induced terror in the victim by blindfolding her with a pillowcase during the attack.

24. We conclude that Defendant already was on notice of these aggravating factors because they are among the circumstances forming the basis of the child abuse and CSP charges on which Defendant was indicted. *See State v. Kurley,* 114 N.M. 514, 519, 841 P.2d 562, 567 (Ct.App.1992). Indeed, Defendant argued at the sentencing hearing that the aggravating factors raised by the State were so closely related to the elements of the underlying offenses that they could not be used to enhance his sentence. *See Swafford v. State,* 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991). While we do not agree that the use of these aggravating factors is precluded by double jeopardy principles, *see Kurley,* 114 N.M. at 516, 841 P.2d at 564 (distinguishing between elements of crime and circumstances surrounding the offense), we nonetheless conclude that the aggravating factors relied upon by the trial court were sufficiently related to the elements of the underlying offenses as to put Defendant on notice of these factors prior to the sentencing hearing. *See id.* at 519, 841 P.2d at 567 (citing *Caristo,* 112 N.M. at 631–32, 818 P.2d at 409–10). For this reason, Defendant has not established that he was prejudiced by the late filing of the State's written notice. We therefore affirm the trial court's decision to enhance Defendant's sentence by three years because of aggravating circumstances.

### III. CONCLUSION

25. For the foregoing reasons, we affirm Defendant's convictions and the enhancement of his sentence for aggravating circumstances.

26. **IT IS SO ORDERED.**

HARTZ, C.J., and WECHSLER, J., concur.