This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                **NO. 29,810**

**DENNIS CHAVEZ**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** A jury found Defendant guilty of one count of voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3 (1994), and one count of criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). Defendant appeals his convictions, arguing that his speedy trial rights were violated and there was insufficient evidence to support his conviction for voluntary manslaughter. We affirm.

**BACKGROUND**

**{2}** Defendant met and befriended a woman named Renee Chavez at a yard sale. Chavez was fighting drug addiction, and Lupe Garcia was her supplier. Defendant killed Garcia on June 24, 2007. The events surrounding Garcia's death are as follows.

**{3}** Defendant and Garcia were involved in an altercation the night before Garcia's death. According to Defendant, Garcia attacked him shortly after Defendant had told Chavez to stop hanging out with Garcia. Defendant testified that Garcia hit him in the face with a gun, stuck the gun in his mouth, and threw a beer bottle at his face. Defendant reported the incident to 911 and identified Garcia as his attacker.

**{4}** The next morning, Defendant went to Chavez's home, where Garcia had spent the night. While Chavez and Garcia were asleep, Defendant removed the air conditioner from the bedroom window where Garcia slept, threw smoke bombs into the room, and flooded the carpet with water from a garden hose. Defendant claimed

2

at trial that he had gone to Chavez's house to "check up" on her and that he threw the smoke bombs because he was concerned about Chavez's safety. During cross-examination, however, Defendant stated that he threw the smoke bombs as "kind of like a kid joke." When Chavez woke up, she called Defendant because she suspected that he was involved in the events at her house, but had not seen him there that morning. Defendant believed that Chavez threatened his mother during their phone conversation.

{5}     Shortly after the phone call, Defendant returned to Chavez's home. Upon arrival, he was yelling and proceeded to break her apartment windows with rocks. Chavez ran out her back door and hid underneath an RV camper. Garcia went out the front door and approached Defendant. Garcia had a pellet gun in his waistband, which Defendant mistook for a higher caliber weapon. When Garcia pulled the pellet gun from his waistband, Defendant began hitting Garcia with a pole that he found on the ground. Defendant hit Garcia with the pole at least twice, grabbed the pellet gun, and ran from the scene of the incident. At this point, Defendant realized that the gun was a pellet gun, and not a higher caliber weapon. Chavez called 911 when she heard Defendant leave. Garcia died from injuries to his head later that day.

{6}     Defendant was arrested on July 12, 2007. The State entered its appearance on July 31, 2007, and substituted counsel nearly a year later on June 4, 2008. On August

3

24, 2007, defense counsel entered his appearance, requested discovery, and made a speedy trial demand. On March 25, 2009, after a series of continuances, Defendant filed a motion to dismiss for violation of his right to a speedy trial. The motion was argued, and orally denied by the district court on March 30, 2009. Jury selection began March 31, 2009, and opening statements began on April 1, 2009. During trial, Defendant's theory of defense was self-defense. The district court instructed the jury on self-defense, but at the request of the State also instructed the jury with New Mexico Uniform Jury Instruction (UJI) 14-5191 NMRA, which states that when an accused is the initial aggressor he may not assert the self-defense justification. On April 9, 2009, the jury entered a verdict against Defendant.

**{7}** Defendant timely filed a notice of appeal with this Court on August 12, 2009. The case was initially assigned to the summary calendar where both parties acknowledged that the district court had not entered written findings regarding the speedy trial issue. This Court ordered a limited remand for the district court to prepare and enter written findings explaining its denial of Defendant's motion to dismiss.

**DISCUSSION**

**I.      SPEEDY TRIAL**

**{8}**      On appeal, Defendant contends that he was denied his right to a speedy trial

4

because one year and nine months had elapsed between his arrest and his trial. The right to a speedy trial is protected under both the federal and state constitutions. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14. In assessing a violation of this right, we examine four factors: (1) the length of delay, (2) the reasons for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Moreno*, 2010-NMCA-044, ¶ 5, 148 N.M. 253, 233 P.3d 782. While we give deference to the district court's fact finding, we independently examine the record to ensure that no constitutional violation has occurred. *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. We address each factor in turn.

**A.    Length of Delay**

**{9}**    Defendant asserts that the twenty-one-month delay was "presumptively prejudicial." The district court considered a delay lasting longer than fifteen to eighteen months "presumptively prejudic[ial]" in the present case because the case "existed on the continuum from intermediate to complex[.]" The parties do not attack the district court's finding with regard to the issue of complexity. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 31, 128 N.M. 382, 993 P.2d 96 (accepting lower court's unchallenged complexity characterization); *see also State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714 ("The question of the complexity of a case is best answered by a [district] court familiar with the factual circumstances,

5

the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities."). Thus, we agree with Defendant that the delay was presumptively prejudicial. However, our inquiry does not end merely because the delay in this case was presumptively prejudicial. *See State v. Garza*, 2009-NMSC-038, ¶ 21, 146 N.M. 499, 212 P.3d 387. ("[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry."). "If a court determines that the length of delay is 'presumptively prejudicial,' then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right." *Id.* ¶ 23.

{10}    In this case, the delay of twenty-one months is sufficient to trigger further inquiry into the four factors. Considering the length of delay as one of the factors, the greater the delay the more heavily it will potentially weigh against the State. *Id.* ¶ 24. In evaluating the length-of-delay factor, we examine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Coffin*, 1999-NMSC-038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and citation omitted). The twenty-one-month period here stretched six months beyond our Supreme Court's guideline on intermediate cases and three months beyond our Supreme Court's guideline on complex cases. *Garza*, 2009-

NMSC-038, ¶¶ 47, 48 (holding that twelve months is presumptively prejudicial for simple cases, fifteen months is presumptively prejudicial for intermediate cases, and eighteen months is presumptively prejudicial for complex cases.)  As such, it weighs against the State.  *See State v. Plouse*, 2003-NMCA-048, ¶ 43, 133 N.M. 495, 64 P.3d 522 (holding under the old guidelines that a total delay of twenty-one months in a complex case, six months beyond the bare minimum, weighed in the defendant's favor).  However, the delay in this case exceeded the bare minimum by six months at most.  We cannot conclude that the extended period of six months was extraordinary, protracted, or otherwise a delay that requires us to weigh the length of delay factor against the State more than slightly.  *See State v. Valencia*, 2010-NMCA-005, ¶ 17, 147 N.M. 432, 224 P.3d 659 (referring in the context of the reasons for delay that "[a] more neutral reason such as negligence and administrative delay, including overcrowded dockets, is weighed 'less heavily,' and the weight to be assigned depends on the length of delay, such as whether it is extraordinary or protracted").  Because the delay in this case was not extraordinary, we weigh this factor slightly in Defendant's favor.

**B.      Reason for the Delay**

{11}      We next examine the reasons for delay, "allocating the reasons for the delay to each side and determining the weight attributable to each reason."  *Tortolito*,

7

1997-NMCA-128, ¶ 8. We have classified three types of delay that either heighten or temper the prejudice to the defendant caused by the length of the delay. *State v. Wilson*, 2010-NMCA-018, ¶¶ 30-31, 147 N.M. 706, 228 P.3d. 490. The types are: "(1) deliberate or intentional delay, (2) negligent or administrative delay, and (3) delay for which there is a valid reason." *Id.* ¶ 31. To classify the delay in a particular case, we assess the justifications provided to excuse the delay. *See Garza*, 2009-NMSC-038, ¶¶ 25-30, (indicating that under the reasons for delay factor the court analyzes "the reason the government assigns to justify the delay" and concentrating on assessing those justifications) (internal quotation marks and citation omitted).

{12} The district court determined that "the delay argument, as a practical matter, focuses mostly, if not completely, on the time period from the arrest[,] June 4, 2007[,] through roughly June 4, 2008." During this time, a large portion of the delay was due to difficulty in obtaining discovery and scheduling witness interviews. The State concedes on appeal that the delay was negligent, and we weigh it against the State. *See Tortolito*, 1997-NMCA-128, ¶ 9 (weighing a neutral reason for delay less heavily than a deliberate reason, but reasoning that "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (internal quotation marks and citation omitted)). The only explanation for the delay identifiable in the record, however, is the State's statement that a personnel issue at the

8

Albuquerque Police Department was preventing the Department from providing the discovery to the State. Although the State's explanation for the delay is not well-explained, or particularized in the record, defense counsel has consistently stated that "the reasons for delay appear to be mostly neutral[,]" and that the defense is "not blaming the State [for the delay] in this case," which was accepted by the parties to have arisen due to delays attributable to the Albuquerque Police Department. The record thus reflects that the defense was satisfied with the State's explanation for the delay. We therefore conclude that the delay was, in large part, outside the State's control yet nonetheless weigh the delay against the State. *See Wilson*, 2010-NMCA-018, ¶ 44 ("The slightness of weight attributed for these eleven months is appropriate because there exists nothing to indicate particularized fault on the State's part[.]").

{13} Although the overall delay lasted twenty-one months, the period of delay that we can characterize as negligent lasted approximately twelve months. Beginning in June 2008, the record reflects that Defendant's case moved "toward trial with customary promptness." *Id.* ¶ 34 (internal quotation marks and citation omitted); *see id.* (weighing periods during which the case proceeds at a reasonable pace "neutrally between the parties" (internal quotation marks and citation omitted)). At that time, the delay in obtaining discovery and scheduling interviews was resolved, and a second prosecutor took over Defendant's case. The replacement prosecutor subsequently

9

"ramped up the speed with which it was pursuing the case[,]" and any remaining delay was attributable to the State's scientific testing of the evidence, which was requested on June 19, 2008. There is nothing in the record to suggest that the State deliberately slowed the processing of the DNA and fingerprint evidence or was negligent in the conduct of its DNA investigation. Rather, it appears that the State attempted to facilitate a speedy processing of the DNA and other evidence requiring scientific analysis, and that Defendant chose to wait until the scientific testing was complete to conduct additional witness interviews. As such, we do not weigh this period of delay against either party. *See Moreno*, 2010-NMCA-044, ¶ 13 (refusing to hold delay against either party during the time when "the case proceeded with customary promptness").

**{14}** Based on the record, we agree with the district court's evaluation of the delay. Out of the overall twenty-one month delay, we weigh the approximately twelve-month period of negligent delay against the State. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Garza*, 2009-NMSC-038, ¶ 26 (internal quotation marks and citation omitted). Negligent delay is assigned a weight based on its protractedness. *Id.* ¶ 30 ("Because the delay was negligent, the extent to

10

which it weighs against the State depends on the length of the delay."). As described above, the delay in this case extended only slightly beyond the threshold to trigger the speedy trial inquiry. Accordingly, we conclude that the delay was negligent but not protracted. The reason for the delay factor thus weighs only slightly in Defendant's favor.

**C.    Assertion of Defendant's Right**

{**15**}    "The third factor in the . . . analysis requires us to assign weight to Defendant's assertion of his right to a speedy trial." *Tortolito*, 1997-NMCA-128, ¶ 15. "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the 'frequency and force' of the defendant's objections to the delay." *Garza*, 2009-NMSC-038, ¶ 32. (citations omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection." *Id.*

{**16**}    Less than one week before trial, Defendant filed a motion to dismiss claiming a violation of his right to speedy trial. Prior to Defendant's motion to dismiss, Defendant asserted the right to speedy trial in defense counsel's entry of appearance and in a motion to compel disclosure of witnesses. The district court afforded both

of those assertions "relatively little weight" because it found that they were "essentially pro forma." *Cf. State v. Marquez*, 2001-NMCA-062, ¶ 21, 130 N.M. 651, 29 P.3d 1052 ("While [the d]efendant's demand was made early in the proceedings, the demand was perfunctory in nature and we assign it little weight."). Defendant does not challenge this finding on appeal, and states only that "Defendant certainly sought to enforce his right to a speedy trial by filing a motion to dismiss and arguing the issue before the [d]istrict [c]ourt." As such, the district court's finding is conclusive on appeal. Rule 12-213 (A)(4) NMRA (stating that an appellant's brief "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive"); *State v. Urioste*, 2002-NMSC-023, ¶ 2, 132 N.M. 592, 52 P.3d 964 (indicating that the trial court's findings are conclusive when not attacked on appeal).

{17} Defendant's first substantive assertion of the right to speedy trial was in his motion to dismiss, filed on March 24, 2009. Defendant's late assertion of his right to a speedy trial does not weigh significantly in his favor. *State v. Maddox*, 2008-NMSC-062, ¶¶ 29-31, 145 N.M. 242, 195 P.3d 1254 (stating that the defendant's attempt to assert the right by a motion to dismiss filed five days before trial was "not timely" and weighed slightly in his favor) *abrogated on other grounds by Garza*, 2009-NMSC-038; *Coffin*, 1999-NMSC-038, ¶ 67 (stating that a second request for a speedy trial, filed two weeks before trial, was not sufficient to weigh the factor in the

defendant's favor); *Tortolito*, 1997-NMCA-128, ¶ 17 (declining to weigh this factor significantly in the defendant's favor where the defendant did not specifically invoke a ruling on his speedy trial right until he moved to dismiss the case almost one year after he was arrested, and where the defendant indicated some willingness to wait for the defense expert's analysis of the DNA evidence in the hope that it would exculpate him).

**D.    Prejudice to the Defendant**

{18}    We consider three interests relevant to the prejudice-factor analysis:  (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility of an impairment to the defense. *Garza*, 2009-NMSC-038, ¶ 35.    Defendant has the burden to demonstrate and substantiate prejudice. *Id.* We weigh the first two interests in the defendant's favor only where the incarceration or the anxiety suffered is undue. *Id.* The district court weighed the prejudice factor slightly in favor of Defendant and against the State.  We agree.

{19}    Defendant argues that he was prejudiced "due to the length of the delay, its detrimental effect on the preparation of his defense due to potential memory lapses, the anxiety and concern he was subjected to . . . and the fact that he was subjected to oppressive pre-trial incarceration."  We agree with Defendant that some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting

13

trial. *Id.* But Defendant has made no particularized showing to substantiate prejudice from undue pretrial incarceration or undue anxiety. In the absence of a particularized showing of prejudice, we will not speculate as to the prejudice to Defendant. *Id.* (stating that "without a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers"); *Wilson*, 2010-NMCA-018, ¶ 48 ("[The d]efendant has made no particularized showing to substantiate prejudice from undue pretrial incarceration or undue anxiety. We will not speculate as to the impact of his pretrial incarceration or the degree of anxiety he suffered.").

{20}     We recognize that we have previously concluded that twenty-two months of pretrial incarceration is unacceptably long. *See Moreno*, 2010-NMCA-044, ¶ 37 (concluding that the length of incarceration is the main prejudice factor to be evaluated and finding that the "[d]efendant did suffer some prejudice" from his almost two year pre-trial incarceration). But Defendant "has not demonstrated [in this case] that any anxiety and concern he suffered was at all different from the anxiety and concern inherent in being incarcerated[.]" *Wilson*, 2010-NMCA-018, ¶ 48. Nor has Defendant offered any reason why or how his defense was impaired, except to argue that he experienced anxiety and concern. *Id.* ¶ 49; *Muse v. Muse*, 2009-NMCA- 003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of

14

counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence."). Despite the prejudice inherent in pre-trial incarceration, we are not persuaded that Defendant was prejudiced to any additional degree that rises to the level of significant for purposes of our analysis.

**E.    Balancing the Factors**

{21}    We remain cognizant of the importance of any Defendant's right for a speedy trial, and caution the State against the nature of the delay that preceded the customary progression of this case to trial. Yet in this case, we conclude that none of the four factors weighs heavily in either side's favor under our analysis. We note Defendant's failure to make an affirmative showing of particularized prejudice, the neutral progression of the case from June 2008 until trial, and Defendant's own delay in presenting his claim in a substantively timely manner. *See, e.g., Garza*, 2009-NMSC-038, ¶ 40. Viewing the circumstances in their entirety and weighing factors slightly in Defendant's favor, we conclude that Defendant's constitutional right to a speedy trial was not violated.

**II.    JURY INSTRUCTIONS**

{22}    It was undisputed at trial that Defendant killed Garcia. However, Defendant argued that his conduct was justified as self-defense because Garcia had previously assaulted Defendant and Defendant believed Garcia was threatening his life with a

15

gun.  **[BIC 1]**  On appeal, Defendant argues that the district court erred in providing the jury UJI 14-5191 because "the facts presented at trial do not support a theory that Defendant was the initial aggressor."  The propriety of jury instructions denied or given involves mixed questions of law and fact that we review de novo.  *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167.

{23}  Although framed as an attack on the jury instructions, Defendant's challenge is essentially to the sufficiency of the evidence to support the challenged instruction. Defendant contends that no reasonable jury could have determined that he was the initial aggressor and as a result his convictions are not based on sufficient evidence. In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we review the record to determine whether substantial evidence exists, either direct or circumstantial, such that a rational jury could have found proof beyond a reasonable doubt with respect to every element of the charged offense.  *State v. Ungarten*, 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct. App. 1993) *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891.  In applying this standard we view the evidence in a light most favorable to the State and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict of the jury.  *Id.*  "When considering . . . requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]."

16

*State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration in original) (internal quotation marks and citation omitted).

**{24}** The district court found, after looking at the various potential scenarios, "that a case can be argued that [Defendant] was the aggressor." We have reviewed the record and we agree that the State presented evidence sufficient to bring into question whether or not Defendant was the initial aggressor. Here, the jury was presented with evidence that at the time of the encounter, Defendant had loudly approached and broken the windows of the home in which Garcia was a guest and from which Chavez then fled and hid. The conflict between Defendant and Garcia was thus occasioned by Defendant's second trip to the house that day—both of which resulted in Defendant's hostile and destructive behavior. *See State v. Hill*, 2001-NMCA-094, ¶ 10, 131 N.M. 195, 34 P.3d 139 ("Unless reasonable minds could not differ, the question of whether [the d]efendant was the instigator or the victim should be left to the jury."). Defendant's assertions that he could not have been the aggressor are based upon his particular view of the collective events, the credibility of the State's witnesses, and of the weight of the evidence against him. *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071. If members of the jury believed Defendant's version of events, it would be reasonable for them to conclude that he acted in self-defense. *Hill*, 2001-NMCA-094, ¶ 10. But, "the jury was not obligated

17

to believe Defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt Defendant's view." *Foxen*, 2001-NMCA-061, ¶ 17; *State v. Vernon*, 116 N.M. 737, 738, 867 P.2d 407, 408 (1993) (noting that the fact finder may reject a defendant's version of the incident in question); *State v. Johnson*, 99 N.M. 682, 685, 662 P.2d 1349, 1352 (1983) (observing that conflicts in the evidence, including conflicts in testimony among witnesses, are to be resolved by the trier of fact). We have reviewed the record and find there was sufficient evidence to support the giving of UJI 14-5191.

**CONCLUSION**

{25}    For the foregoing reasons, we affirm the judgment of the district court.

{26}    **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**



_____

**JAMES J. WECHSLER, Judge**




_____

**TIMOTHY L. GARCIA, Judge**