This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                        **NO. 28,804**

**JOSEPH ALBERT RAMOS,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Michael T. Murphy, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellant

The Pickett Law Firm, LLC
Mollie C. McGraw
Mark L. Pickett
Las Cruces, NM

for Appellee

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant was charged with aggravated driving while intoxicated (DWI) and possession of an open container. *See* NMSA 1978, § 66-8-102(D)(1) (2008) (amended 2010); NMSA 1978, § 66-8-138 (2001); NMSA 1978, § 66-8-139 (1991). Defendant filed a motion to dismiss the charges based on his claim that his right to a speedy trial had been violated. After a hearing on the matter, the district court granted Defendant's motion and dismissed the charges. The State appeals. We hold that Defendant's right to a speedy trial was not violated.

**BACKGROUND**

On November 23, 2006, Defendant was stopped after Officer Robles observed him speeding. Based on contact with Defendant, Officer Robles noted that Defendant was slow to respond; that Defendant had a flushed face, slurred speech, bloodshot and watery eyes, and smelled of alcohol; and that Defendant did not adequately complete field sobriety tests. Defendant admitted that he had consumed two beers. Defendant was arrested on DWI and open container charges and was released on the same day after posting bond.

Charges were initially filed in magistrate court on November 27, 2006, but the State dismissed and refiled the charges in district court on February 6, 2007. Defendant entered a waiver of arraignment, a plea of not guilty, and filed a jury demand in both courts. Trial was set for July 19, 2007, and a scheduling order was

filed on March 5, 2007. On July 17, 2007, just two days prior to the scheduled trial date, Defendant filed two motions in limine to exclude the breath test evidence and foundational evidence for the breath tests. The trial was rescheduled for August 15, 2007. Defendant's motion to exclude the foundational evidence was granted on August 10, 2007, based on the State's failure to timely disclose the documents. Defendant filed an assertion of his right to a speedy trial on August 15, 2007, after being informed that the State would appeal the grant of Defendant's motion in limine. The State also requested that the district court reconsider its order granting Defendant's motion in limine to exclude evidence. The request was denied, and the State filed an amended notice of appeal on August 23, 2007.

On appeal, we reversed the district court's decision, holding that there had been no prejudice to Defendant from the delayed disclosure of documents, that the State did not fail to disclose but only delayed disclosure of the documents, and that the district court should have imposed on the State a lesser sanction than exclusion of the breath alcohol foundational evidence. Subsequent to this Court's mandate issued on February 11, 2008, the district court reinstated the case on its docket on February 27, 2008. Trial was then set for June 19, 2008.

On June 6, 2008, Defendant filed a motion to dismiss the charges for violation of his right to a speedy trial. After hearing the matter, the district court granted

Defendant's motion and dismissed the case. The district court made the following findings:

> 1. The total length of delay in this case is eighteen (18) months, twenty-six (26) days.
> 2. Six months, twelve days while this case was on appeal is neutral and does not weigh against either party.
> 3. One month delay is attributed to Defendant.
> 4. As to the remaining eleven (11) months, fourteen (14) days, the State was unable to meet its burden of persuasion to show that Defendant's speedy trial right was not violated.
> 5. Defendant asserted his right to [a] speedy trial.
> 6. Defendant suffered actual prejudice in the loss of employment opportunities and in concern and anxiety regarding the charges pending against him.

**DISCUSSION**

In analyzing whether Defendant's speedy trial right was violated, we review the particular facts and circumstances to determine whether an "actual and articulable deprivation" of Defendant's right to a speedy trial existed. *State v. Garza*, 2009-NMSC-038, ¶¶ 11-12, 146 N.M. 499, 212 P.3d 387. We conduct our analysis by balancing four factors: (1) the length of the delay in bringing Defendant to trial, (2) the reasons for the delay, (3) Defendant's assertion of his right to a speedy trial, and (4) the actual prejudice suffered by Defendant as a result of the delay. *Id.* ¶ 13 (relying on *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Over time, the balancing test has been adapted to the varying circumstances presented in each case involving a claim of a speedy trial violation. *Id.* ¶ 14. However, as noted by our Supreme Court

4

in *Garza*, our focus remains on the underlying purposes of the balancing test in analyzing the right to a speedy trial. *Id.* Although we give deference to findings made by the district court that are supported by substantial evidence, we must conduct an independent examination of the record before concluding that a speedy trial violation has or has not occurred. *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522 (noting that we give deference to the district court's fact finding before independently examining the record to insure that no speedy trial violation has occurred); *see State v. Manzanares*, 1996-NMSC-028, ¶¶ 1, 10, 121 N.M. 798, 918 P.2d 714 (explaining that, in speedy trial cases, when the findings of the district court are supported by substantial evidence, we weigh the findings de novo).

**Length of the Delay**

We first determine whether the entire length of the delay is "presumptively prejudicial." Our Supreme Court has recently adopted new guidelines for determining when a delay is "presumptively prejudicial." *Garza*, 2009-NMSC-038, ¶¶ 48-50. The new guidelines are applicable in cases, such as this, where a motion to dismiss based on a speedy trial violation is "initiated on or after August 13, 2007." *Id.* ¶ 50. Defendant filed his motion to dismiss based on a speedy trial violation on June 6, 2008. The parties agree that this is a simple case. Under the new guidelines, a delay of one year is considered "presumptively prejudicial" in a simple case. *Id.* ¶ 48. We

5

note that, based on the recent decision in *Garza*, a presumptively prejudicial delay is merely a triggering mechanism for applying the balancing test and does not lead to a presumption that a defendant's right to a speedy trial has been violated. *Id.* ¶ 21.

In this case, Defendant was arrested on November 23, 2006, and the final trial was set for June 19, 2008. The district court found and the parties agree that the entire delay amounted to eighteen months and twenty-six days. Because this is a simple case, a delay over twelve months is considered to meet the presumption. Therefore, we must apply the factors of the balancing test to the facts of this case.

"Considering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the State." *Id.* ¶ 24. The delay in this case was six months longer than the one-year delay necessary to trigger a review of the factors. Therefore, the delay factor weighs in Defendant's favor. *See State v. Marquez,* 2001-NMCA-062, ¶¶ 10-12, 130 N.M. 651, 29 P.3d 1052 (holding that a nine-month delay beyond the minimum nine-month period for a simple DWI case weighed heavily against the state); *State v. Lujan*, 112 N.M. 346, 348, 815 P.2d 642, 644 (Ct. App. 1991) (concluding that a thirteen-month delay in a simple case was "relatively lengthy").

**Reasons for the Delay**

In his motion filed with the district court, Defendant claimed that the State was

responsible for the delay in time that the case was pending in magistrate court, the time between the trial setting on July 19 until August 23, and the three-month-and-three-week delay after the appeal was decided and before the new trial date. The district court made findings on the speedy trial factors, including findings that one month of delay should be attributed to Defendant and the delay while the case was on appeal should be attributed to neither party. After subtracting one month attributable to Defendant and the time that the case was on appeal, however, the district court made a very general finding that, for the remaining eleven months and fourteen days "the State was unable to meet its burden of persuasion to show that Defendant's speedy trial right was not violated." Although this broad finding implicitly attributes the entire remaining period to the State, the district court did not specifically break down the remaining period to determine why one party or the other was responsible for the delay. The district court's finding amounts to a legal conclusion that we will evaluate independently. *See Manzanares*, 1996-NMSC-028, ¶ 1; *Plouse*, 2003-NMCA-048, ¶ 34.

The district court weighed as neutral the six-month-and-twelve-day delay that occurred while the State's appeal was pending in this Court, attributing that delay to neither party. At the hearing on the speedy trial claim and in the motion to dismiss filed with the district court, Defendant agreed that the delay of six months and twelve

7

days while the appeal was being heard should be considered neutral and should not weigh against either party. Despite Defendant's concession below, he argues strenuously on appeal that the delay caused by the appeal should weigh slightly against the State. We have held that delay resulting from judicial review of a case should not be considered for speedy trial purposes without a demonstration that there was unreasonable delay caused by the state or that there was unjustifiable delay caused by the appellate court. *See State v. Wittgenstein*, 119 N.M. 565, 570-71, 893 P.2d 461, 466-67 (Ct. App. 1995). Defendant makes no such demonstration on appeal. We conclude that the district court was correct in finding that the delay while the case was on appeal does not weigh against either party.

At the hearing, the State argued that one month of the delay, between July 17 and August 23, should be attributable to Defendant. The district court agreed that Defendant had everything he needed to proceed to trial once he received all of the documents related to the breath tests, and consequently, attributed one month of the delay to Defendant. On appeal, Defendant argues that the district court's finding is unreasonable because he was ready to proceed to trial on both dates, the State had delayed the case in magistrate court, the State was untimely in disclosing the foundational evidence for the breath tests due to scheduling issues, and the State filed an inappropriate appeal in this case. We cannot say that the district court's finding

8

was not supported by the evidence. As of July 17, Defendant had the breath tests, the logs, and the certification evidence, everything necessary to proceed to trial. Nevertheless, Defendant filed motions in limine, necessitating a hearing and decision before trial could commence. The State was justified in seeking its appeal of the district court's ruling that excluded the foundational evidence regarding the breath test results. The appeal to this Court established that the motion in limine should not have been granted. The trial settings scheduled for July 19, 2007, and reset for August 15, 2007, could have timely commenced as scheduled if Defendant's motion in limine had not caused a postponement. We agree with the district court's conclusion that this one-month delay is properly attributable to Defendant. Subtracting the neutral time period of six months and twelve days during the appeal and the one-month period attributed to Defendant's motion in limine, we are left with the remaining period of eleven months and fourteen days that the district court summarily attributed to the State.

The time period prior to the motion in limine and after the case was remanded by this Court must now be addressed de novo. We first address the delay of eight months and twenty-three days between Defendant's arrest and the filing of Defendant's motion in limine.

Defendant argued to the district court that: (1) the State chose to initially file

9

the case in magistrate court and then dismissed the magistrate court case prior to the scheduled pretrial conference, indicating that the State intended "all along" that the case be heard in the district court; (2) the first trial setting in district court was vacated because the State's prosecutor was unavailable, even though the State could have substituted a different prosecutor in this case; and (3) the State was not prepared for trial on July 19, 2007, in that the State did not provide Defendant with foundational breath test evidence until two days prior to the scheduled trial date and the State had not filed a witness list prior to the trial date. Defendant also refers to additional facts and arguments on appeal regarding the State's failures to prepare and proceed to trial in a diligent manner prior to the scheduled setting on July 19, 2007. Defendant argues that the State made a tactical decision to delay the case when it initially filed a complaint in magistrate court and then refiled in district court. The case was first filed in the magistrate court and was not refiled in district court for a period of two-and-one-half months, November 27, 2006 to February 6, 2007. However, there is nothing to show that the State's filing and dismissal of the case in magistrate court were done intentionally or in bad faith. *See Garza*, 2009-NMSC-038, ¶ 28. Therefore, we attribute this delay to negligence and do not weigh it heavily against the State. *Id.* (noting that unless the delay arising while a case sat in magistrate court was caused intentional or in bad faith by the state, it will be considered negligent).

As to the period of time between February 6, 2007 and July 17, 2007, a period of five months and eleven days, Defendant makes several meritorious arguments that this period of time should be attributed against the State. First, the State failed to timely disclose the breath evidence and had not filed its witness list and other pretrial pleadings. Next, the State reassigned designated trial counsel to another case immediately prior to the scheduled July trial date. Finally, this Court's decision to reverse the district court's ruling on the motion in limine cannot be construed to condone the State's delay in disclosing the forensic breath evidence on the eve of trial. The evidence indicates that the State was not diligently proceeding to trial with customary promptness or on a normal and timely course. We agree with the district court that this five-month-and-eleven-day period was properly attributed against the State.

Finally, Defendant asserts that the delay that occurred following the mandate from this Court should also weigh against the State. The case was reinstated in the district court on February 27, 2008, and trial was set for June 19, 2008, a delay of three months and twenty-three days. Defendant argued to the district court that the delay would not have happened if not for the State taking the case out of magistrate court, not having been prepared to go to trial on July 19, 2007, and not having filed an appeal instead of going to trial on August 15, 2007. We are not convinced that any

of these circumstances arising prior to August 15, 2007, may be attributed to the time period after the case was reinstated in the district court on remand. Once the case was remanded, the district court timely scheduled a new trial and the matter was quickly proceeding toward trial in an expeditious manner. Defendant has failed to raise a factual issue regarding any action by the State that would have caused a further delay in the trial scheduled to commence on June 19, 2008. Defendant makes no allegation that the district court should have scheduled the new trial sooner than June 19, 2008. Defendant exclusively relies on the premise that because there were delays attributable to the State prior to appeal, the additional time to expeditiously proceed to trial after remand must also be attributed to the State. Defendant fails to provide any authority for this position, and we will assume that none exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). It appears the case after remand was proceeding on a prompt course with no unusual periods of delay that would be attributable to either party. *See State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M. 242, 195 P.3d 1254 (weighing as neutral the period of time during which the case moved toward trial with "customary promptness"). We conclude that this three-month-and-twenty-three day delay should not be weighed against either party.

We summarize our determinations as follows:

November 23, 2006 to February 6, 2007, attributable against the State;
February 6, 2007 to July 17, 2007, attributable against the State;

12

> July 17, 2007 to August 23, 2007, attributable against Defendant;
> August 23, 2007 to February 27, 2008, attributable to neither party; and
> February 27, 2008 to June 19, 2008, attributable to neither party.

Overall, the reasons for the delay weighs against the State but only to a slight or moderate degree.

**Assertion of Defendant's Right**

On review of the assertion of the right to a speedy trial, we look at the timing of the assertion and the manner in which the right was asserted. *Garza*, 2009-NMSC-038, ¶ 32 (stating that appellate court gives weight to this factor based on the frequency and the force of a defendant's objections to the delay). Defendant claims that he asserted his right to a speedy trial five times in documents filed with the magistrate and district courts, including three demands for trial by jury and two waivers of arraignment and pleas of not guilty. In addition, on the second trial date when the State announced that it was going to appeal the ruling on the motion in limine, Defendant filed a document specifically asserting his right to a speedy trial, arguing that he was prepared to go to trial on July 19 and on August 15, but trial had been vacated on both of those dates. Defendant filed a motion to dismiss on speedy trial grounds thirteen days prior to the final trial date scheduled on June 19, 2008.

Defendant's waivers of arraignment included requests that "all proceedings in this matter be subject to the Speedy Trial Act." The jury demands do not refer to his

right to a speedy trial. Defendant only mentioned speedy trial in his waivers of arraignment filed in both the magistrate court and the district court. Pro forma pretrial motions are usually given relatively little weight in a speedy trial analysis. *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

Defendant next filed a separate assertion of his right to a speedy trial immediately after being informed that the State would pursue an appeal. Defendant pointed out that on August 23, 2007, "nine months will have passed from the time of Defendant's arrest." We interpret this filing as notice to the State that Defendant's speedy trial rights would soon be an issue in the case. Defendant filed his assertion after he became aware of the State's decision to seek an appeal to this Court. Finally, Defendant filed a motion to dismiss the case on speedy trial grounds just thirteen days prior to the new date set for the trial after the matter was remanded to the district court.

We agree with the district court's finding that Defendant's assertion of his right to a speedy trial was supported by the evidence. However, "we accord weight to the 'frequency and force' of [D]efendant's objections to the delay." *Garza*, 2009-NMSC-038, ¶ 32. Based on the content and timing of the assertions filed in this case, we do not weigh this factor heavily against the State. *See id.* (recognizing that a motion may be mitigated where the defendant's assertion is closely aligned with procedural

14

maneuvers that slow down the proceedings or result in delaying the trial); *Maddox*, 2008-NMSC-062, ¶ 28 (reviewing the assertion of the defendant's right to a speedy trial based on the adequacy and timeliness of the assertion); *see also Marquez*, 2001-NMCA-062, ¶ 22 (holding that the defendant's filing of a motion to dismiss on speedy trial grounds six days prior to trial justified weighing assertion of right factor slightly in favor of the defendant).

**Prejudice**

We consider three interests when analyzing the prejudice factor of the balancing test. These interests include: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern to the defendant, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. In most cases, time spent prior to trial is simply idle or dead time, has a detrimental impact on the individual, often means the loss of a job, and disrupts family life. *See id.* (noting that some degree of oppression and anxiety is inherent for every defendant who is awaiting trial). "The third type of prejudice is the 'most serious'" *Id.* ¶ 36 (recognizing that the prejudice is obvious where a witness is missing or unavailable, but prejudice also exists where witnesses are unable to accurately recall events of the distant past). In this case, Defendant was incarcerated for no more than a couple of hours, and Defendant did not present any evidence to show that his defense was impaired.

15

The district court found that "Defendant suffered actual prejudice in the loss of employment opportunities and in concern and anxiety regarding the charges pending against him," which falls under the second category of interest listed for prejudice in *Garza*. The district court did not articulate how Defendant's specific circumstances are distinguishable from those normal pretrial circumstances recognized in *Garza*. *See id.* ¶ 35. We will now address Defendant's specific circumstances of alleged prejudice de novo.

Defendant had the burden to prove that he suffered particularized prejudice based on an undue level of anxiety and concern rather than generalized prejudice normally resulting from the delay in proceeding to trial. *Id.* Unless the length of and reasons for delay weigh heavily in favor of the defendant, the defendant is required to show "particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. Although the length of delay, the reasons for delay, and the assertion of the right to a speedy trial weigh moderately in favor of Defendant, the district court did not recognize any factor weighing heavily in favor of Defendant. We conclude that these factors do not weigh heavily in Defendant's favor. Therefore, based on the criteria set forth in *Garza*, Defendant was required to show particularized prejudice resulting from the delay in this case. A particularized showing of prejudice is not one based on speculation or on the possibility of prejudice. *Id.* ¶ 35; *see*

16

*Maddox*, 2008-NMSC-062, ¶ 35. In addition, Defendant must show a nexus between the claimed prejudice and undue delay. *See Salandre v. State*, 111 N.M. 422, 431, 806 P.2d 562, 571 (1991). It was Defendant's burden to prove actual particularized prejudice, after which the burden would shift to the State to persuade the district court "on the ultimate question of whether the defendant's right to a speedy trial has been violated." *Garza*, 2009-NMSC-038, ¶ 22.

At the hearing before the district court in June 2008, Defendant testified that he was currently employed and had worked for the same employer for the past two-and-one-half years. Defendant graduated with a degree in criminal justice in December 2007, and he hoped to find employment with the border patrol. Defendant claimed that he had been in "legal purgatory" since he was arrested and that the pending case had been a constant stressor in his life. He added that his mother and his brother were worried about the situation.

Defendant graduated from high school in 2002 and took his second semester off after enrolling in college. Defendant admitted that he was convicted of DWI earlier during his college years and that he had investigated career options after the DWI conviction. Defendant claimed that he had spoken with military recruiters about enlistment in light of the prior DWI conviction and the pending charges and was told that he could not enlist or "presign" and that no branch of the military could "touch"

him until he was legally "free and clear."

Defendant also testified that he took an exam and filled out an employment packet for the border patrol in February 2008. He testified that he received a letter stating he did not qualify for employment, and he testified that he believed that was due to "the pending case." The letter, dated March 3, 2008, informed Defendant that a background investigation indicated Defendant did not meet the suitability factors labeled as "Alcohol Abuse" and "Criminal Conduct," but the letter did not provide information about what particular incident was referred to with respect to alcohol abuse or criminal conduct. Defendant stated that he could not say with "absolute certainty" that the border patrol's letter was based on the pending charges and not on his prior DWI conviction, but that he was "pretty sure" it was. As support for his statements, Defendant claimed that he had talked with and was aware of other border patrol agents that had a prior DWI conviction and "have still been able to get in and be all right." Defendant withdrew his border patrol application after receiving the results of the background investigation.

Based upon Defendant's testimony, the district court found that "Defendant suffered actual prejudice in the loss of employment opportunities and in concern and anxiety." At the hearing, the district court stated that Defendant had articulated a unique prejudice based on "real impairment" to employment prospects and general

18

"background noise" for anyone facing charges, and further stated that "this rises above."

When analyzing a speedy trial claim, we give due deference to the district court's findings so long as they are supported by substantial evidence. *Manzanares*, 1996-NMSC-028, ¶ 1. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We reiterate that we review the ultimate findings in order to determine the weight assigned to the findings, and we independently examine the record before we will conclude that a speedy trial violation has or has not occurred. *Manzanares*, 1996-NMSC-028, ¶ 1; *Plouse*, 2003-NMCA-048, ¶ 34. We have reviewed the evidence presented with regard to the prejudice factor, but we do not reach the same conclusions as the district court. Under the circumstances presented in this case, Defendant did not establish a level of particularized prejudice sufficient to establish a violation of his right to a speedy trial.

First, we point out that Defendant retained his existing employment throughout the entire period of time that his DWI charges were pending before the district court. In addition, Defendant did not graduate from college or attempt to enlist in the military until December 2007, approximately two months before the remand order was

entered reinstating the case on the district court docket. The trial was timely scheduled to occur within a few months after being reinstated. Defendant testified that he was told no military branch would accept him, but he neglected to inform the district court of whether he would become eligible for service after his trial in June 2008. Defendant's assertion about the possibility of whether he would be accepted by the military was not otherwise supported by more particularized evidence. Because he never submitted an actual application to enlist in the military, it is not possible to determine how the resolution of his charges within a few months would have affected his eligibility for military service. These factual circumstances do not support the district court's determination. No significant impairment was established regarding Defendant's eligibility for military service. This type of short delay when enlisting for military service would not rise above the typical inconvenience in employment articulated in *Garza*. Defendant has failed to meet his burden to establish particularized evidence of prejudice with regard to his opportunity to enlist in the military.

Second, Defendant applied for and was deemed unqualified for a job with the border patrol. This occurred in February and March 2008 when the case was just a few months from being resolved at the June 2008 trial. No evidence was presented asserting that the border patrol rejection had an impact on Defendant's existing job.

Pursuant to our standard of review we will accept Defendant's assertion that the border patrol would not hire him while his charges remained unresolved for a few months. It is unclear whether Defendant was eligible for hire after the June 2008 trial, regardless of the outcome. The three-month delay before trial would be irrelevant if Defendant was still ineligible for hire due to his previous DWI conviction. Defendant's testimony on this subject was unclear. He stated that some of the other border patrol agents he knows through family members have prior DWI convictions and have still "been able to get in and be all right." When asked to clarify, Defendant agreed that he "was aware" of other border patrol agents that had prior DWI convictions. Defendant did not indicate whether his particular situation was in any way similar to the situations of the other agents or would make him eligible for hire after his June trial. If he remained eligible for hire in three months, Defendant also failed to explain why a three-month delay in the application process created such a heightened level of prejudice. No testimony exists to clarify these issues.

Although Defendant understood that he was rejected by the border patrol because of his pending DWI charge, the real issue is whether he was eligible for hire a few months later. Despite the uncertainty in answering this question, this three-month delay cannot be considered the heightened level of particularized prejudice necessary to establish a speedy trial violation under these circumstances. Defendant

was fully employed and had just graduated from college. Defendant's existing job was not affected by the new DWI charges, his conditions of release, or the pending resolution of his case. The only disruption involved waiting for three additional months to apply for a potential border patrol job that Defendant might be eligible to secure. Again, this is the type of disruption that is typically inherent while awaiting trial and cannot be considered nearly as severe as incarceration or the loss of an existing job. *See Garza*, 2009-NMSC-038, ¶ 35. The short time frame Defendant needed to wait for his new trial setting after remand also minimizes any possible prejudice that may have resulted from waiting to reapply for a border patrol job. This does not establish unique prejudice that would rise above the typical circumstances articulated in *Garza*. Under these circumstances, the district court erred in finding that Defendant's right to a speedy trial was violated due to the temporary disruption in seeking a border patrol job.

Defendant's final assertion of prejudice was based upon the anxiety and concern caused by the pending charges. Defendant testified generally that he was concerned about the charges, as were his mother and brother. Defendant did not provide any details about this concern. Defendant stated that the pending charges were a "big stressor," that he thought about the fact that he was graduating but "not going toward" the purpose of his education and that he was still working at his former

job and was unable to "make use" of his degree. Because some level of concern accompanies charges pending in a criminal case, we look for a showing of undue concern or a showing that the concern has continued for a period of time that is unacceptably long. *State v. Coffin*, 1999-NMSC-038, ¶ 69, 128 N.M. 192, 991 P.2d 477; *see Garza*, 2009-NMSC-038, ¶ 37 (holding that a non-particularized showing of prejudice is not the kind of prejudice contemplated in a speedy trial analysis). We are not convinced that Defendant's level of concern went beyond that of any other person facing charges in a criminal matter. *See State v. Hayes*, 2009-NMCA-008, ¶ 14, 145 N.M. 446, 200 P.3d 99 (filed 2008), *cert. denied*, 2008-NMCERT-012, 145 N.M. 571, 203 P.3d 102 (determining that the defendant did not show prejudice based on claims of anxiety where some amount of anxiety is inherent for persons jailed while awaiting trial and the defendant was not in custody for the charges in the case). The period of time between the date Defendant earned his degree and the date of trial was very short. He had just applied for a new job four months before trial. The district court was also expeditious in setting a June trial date within months after Defendant's graduation. Furthermore, the anxiety and concern suffered by Defendant's family members is irrelevant to his speedy trial claim. We conclude that the evidence does not establish a particularized showing of prejudice based upon any excessive anxiety or stress suffered by Defendant.

23

In sum, we conclude that Defendant did not make a heightened showing of actual or particularized prejudice cognizable under this fourth factor of the *Barker* analysis. *See Garza*, 2009-NMSC-038, ¶ 37. We do not weigh this factor in favor of Defendant.

**Balancing the Four Factors**

The balancing of the four *Barker* factors was also discussed in *Garza*. *See Garza*, 2009-NMSC-038, ¶¶ 38-40. Where particularized prejudice is lacking, a defendant may still be entitled to relief where the other three *Barker* factors weigh heavily in the defendant's favor. *Id.* ¶ 39 (holding that "generally a defendant must show particularized prejudice . . . [h]owever, if the length of delay and the reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated"). In the present case, Defendant has failed to show the particularized prejudice required by the fourth *Barker* factor, and the other three Barker factors do not weigh heavily in Defendant's favor. As a result, we conclude that there was no violation of Defendant's speedy trial right in this case.

**CONCLUSION**

We reverse the district court's order dismissing the charges against Defendant

based upon a speedy trial violation. We remand this case to the district court for reinstatement of the charges against Defendant and further proceedings. Because additional time has now passed as a result of the two appeals in this case, we direct the district court to expeditiously proceed with the final resolution of these charges.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**