2001-NMCA-062

29 P.3d 1052

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur E. MARQUEZ, Defendant–
Appellant.**

**No. 21,025.**

Court of Appeals of New Mexico.

June 26, 2001.

Certiorari Denied, No. 27,039,
Aug. 13, 2001.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Lisa N. Cassidy, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ARMIJO, Judge.

{1} Arthur Marquez (Defendant) appeals his conviction of driving under the influence (DUI). He contends that he was denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and the N.M. Const. art. II, § 14. We conclude that Defendant's right to a speedy trial was violated and reverse his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} On December 3, 1997, Defendant was arrested for DUI and various other misdemeanor traffic offenses. The following day, he appeared before the metropolitan court and was subsequently released on his own recognizance subject to several conditions of release. One of those conditions was that he was not permitted to leave Bernalillo County without the permission of the court.

{3} Five months after his arrest, on May 6, 1998, Defendant was indicted by a grand jury. He was subsequently arrested on July 3, 1998 and arraigned on July 13, 1998. The district court released Defendant on a $3,500 bond subject to various conditions, including the condition that he would not leave the county without the permission of the court.

{4} On October 8, 1998, district court personnel mistakenly docketed a nolle prosequi, effectively dismissing Defendant's charges without prejudice. The nolle prosequi was intended to be filed in metropolitan court, not in district court.

{5} On October 29, 1998, the State tendered a plea offer to Defendant. From this date until January 11, 1999, Defendant and the State were involved in plea negotiations. On January 11, 1999, the State filed a Rule 5–604 NMRA 2001 petition for a three-month extension of time on the grounds that the case was not set for trial prior to the running of the six-month rule. The defense took no position on this request and an extension was granted to and including April 13, 1999. Also, on January 11, 1999, the prosecutor discovered that the nolle prosequi had been mistakenly docketed in the district court cause, instead of the metropolitan court cause, and filed a Motion to Review and Correct District Court's Criminal Division's Incorrect Dismissal granted on January 26, 1999. In granting the State's motion, the court determined that the dismissal of Defendant's district court cause was a clerical error.

{6} On April 7, 1999, the State sought a second Rule 5–604 extension, this time requesting an additional six months. Defendant opposed this request. On April 16, the Supreme Court granted a three-month extension up to and including July 16, 1999. A plea hearing was scheduled for March 29, 1999. The plea hearing did not commence on that date. Rather, the court scheduled a hearing on Defendant's motions to dismiss,

one of which was based on the grounds that his right to a speedy trial was violated.

{7} The district court held a hearing on Defendant's motion to dismiss on April 14, 1999. The court heard argument, but withheld its decision pending the Supreme Court's review of the second Rule 5–604 petition. The court ultimately denied Defendant's motion on June 21, 1999. On the same day, Defendant pled guilty to driving under the influence, reserving his right to appeal the speedy trial issue.

## DISCUSSION

■ {8} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The speedy trial right applies to the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 218–22, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The New Mexico Constitution also guarantees a defendant a "speedy public trial." N.M. Const. art. II, § 14. It is primarily the responsibility of the State to bring a case to trial within a reasonable period of time. *State v. LeFebre,* 2001–NMCA–009, ¶ 9, 130 N.M. 130, 19 P.3d 825.

■ {9} In deciding whether Defendant's right to a speedy trial has been violated, we apply the four-factor test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We balance (1) the length of the delay, (2) the reasons for the delay, (3) Defendant's assertion of the right, and (4) the prejudice to Defendant. *Salandre v. State,* 111 N.M. 422, 425, 806 P.2d 562, 565 (1991). The length of the delay initially serves to distinguish cases of ordinary delay from "presumptively prejudicial" delay. *State v. Coffin,* 1999–NMSC–038, ¶ 55, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and citation omitted). If the length of delay is not presumptively prejudicial, an analysis into the remaining three factors is normally not necessary. *LeFebre,* 2001–NMCA–009, ¶ 9, 130 N.M. 130, 19 P.3d 825. "[O]nce a defendant has demonstrated presumptively prejudicial delay, the burden of persuasion shifts to the [S]tate to show, on balance, that defendant's speedy trial right

was not violated." *Salandre,* 111 N.M. at 428, 806 P.2d at 568. Upon finding a presumptively prejudicial delay, we independently balance the *Barker* factors against one another in order to determine whether there has been a constitutional violation. *See Coffin,* 1999–NMSC–038, ¶ 55, 128 N.M. 192, 991 P.2d 477; *Salandre,* 111 N.M. at 430, 806 P.2d at 570. "This balancing process should not be done mechanically, and a particularly strong showing on one factor by either party may be dispositive under the facts of a particular case." *Salandre,* 111 N.M. at 430, 806 P.2d at 570.

### I. *Length of the Delay*

{10} The State contends that there was a sixteen-month delay in this case from the date of Defendant's initial arrest on December 3, 1997 to the original plea hearing date on March 29, 1999. It concedes that because this is a relatively simple DUI case, the sixteen-month delay is presumptively prejudicial. Defendant contends that this case involves an eighteen-month delay between December 3, 1997—the date of Defendant's initial arrest, and June 21, 1999—the date of Defendant's plea. We find the distinction between sixteen and eighteen months to be without significance, in that either duration of time is significantly well beyond the presumptively prejudicial time period of nine months for a simple DUI case. *See id.* at 428, 806 P.2d at 568 ("We are of the opinion that nine months marks the minimum length of time that may be considered presumptively prejudicial, even for a case ... involving simple charges and readily-available evidence.").

■ {11} We agree with Defendant, however, that our analysis of his speedy trial claim must include the time from the date of Defendant's initial arrest to the date of his plea. Throughout this period, criminal charges were pending against Defendant and he was subject to the trial court's conditions of release which acted as a restraint upon his freedom. The right to a speedy trial protects against unnecessarily extended periods of such restraint.

The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

State v. Kilpatrick, 104 N.M. 441, 444, 722 P.2d 692, 695 (Ct.App.1986) (quoting United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)).

{12} Admittedly, a presumptively prejudicial delay does not mandate that the length-of-delay factor of the Barker test weigh against the State. Coffin, 1999–NMSC–038, ¶ 59, 128 N.M. 192, 991 P.2d 477. In considering this factor, we must consider " 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.... [T]he presumption that pretrial delay has prejudiced the accused intensifies over time.' " (Citation omitted.) Id. (quoting Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). In this case, the delay extended nine months beyond the minimum nine-month period for a simple DUI case. We thus weigh this factor heavily against the State. See Zurla v. State, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (holding that a seventeen-month delay in a simple shoplifting case weighed heavily against the state); Kilpatrick, 104 N.M. at 444, 722 P.2d at 695 (" '[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.' ") (quoting Barker, 407 U.S. at 531, 92 S.Ct. 2182); cf. Coffin, 1999–NMSC–038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (holding that where a complex death penalty case was delayed only six days beyond the minimum fifteen months, the length of the delay weighed neutrally between the parties).

## II. Reasons for the Delay

{13} We analyze the second Barker factor by "allocating the reasons for the delay to each side and determining the weight attributable to each reason." State v. Tortolito, 1997–NMCA–128, ¶ 8, 124 N.M. 368, 950 P.2d 811. When weighing this factor, we must bear in mind that (1) the four Barker factors are interrelated and must be evaluated in light of the particular circumstances of the case and (2) we should compare the conduct of the State and Defendant. See Zurla, 109 N.M. at 643, 789 P.2d at 591. We assign different weights to different reasons for delay. For example, intentional delay by the State for tactical reasons is weighed heavily against the State, while delay caused by the State's negligence is deemed a more neutral reason that weighs less heavily. Kilpatrick, 104 N.M. at 445, 722 P.2d at 696; Zurla, 109 N.M. at 643, 789 P.2d at 591. We examine each phase of this case from the date of Defendant's arrest to the date of his plea. Upon our examination of the reasons for delay, we find no showing of any intention by the State to delay Defendant's trial. However, we find the majority of the eighteen-month delay attributable to the State, notwithstanding a five-month period of plea negotiations weighing neutrally, and none of the delay attributable to Defendant.

{14} The first phase of our analysis is the five-month period between Defendant's arrest on December 3, 1997 and his indictment on May 7, 1998. The State claims that during this time period, pre-indictment delay in the Bernalillo County District Attorney's Office for felony DUIs was between approximately six and twelve months due to the volume of cases and the limited number of staff allocated to perform the necessary tasks. While we recognize the resource constraints experienced by the State in bringing these types of cases to trial in a timely manner, the delay caused by extensive caseloads is nonetheless attributable to the State. We weigh this delay against the State, though not heavily. See Kilpatrick, 104 N.M. at 445, 722 P.2d at 696 (holding that the state's extensive caseload is a neutral reason for delay and " 'should be weighted less

heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' ") (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182); *State v. White*, 118 N.M. 225, 226, 880 P.2d 322, 323 (Ct.App.1994) (holding that delay caused by normal caseload pressures weighs slightly against the state); *see also State v. Johnson*, 113 N.M. 192, 193, 824 P.2d 332, 333 (Ct.App.1991) (weighing delay attributable to further investigation, inadequate staffing, a busy trial schedule, and attempts by prosecutor to discuss possible plea bargain with defense counsel slightly against the state).

{15} We next consider the period of delay between Defendant's indictment on May 7, 1998 and his arraignment on July 13, 1998. On the day that Defendant was indicted, a warrant was issued for his arrest. The State did not serve the warrant until July 3, 1998. We note that the State offers no explanation for the delay in serving the warrant. Defendant asserts that the State did not make an effort to locate him after the indictment, even though his address was known and had not changed since his initial arrest. The State has a constitutional duty to make a diligent, good-faith effort to bring Defendant to trial. On the record before us, we fail to ascertain that this duty was honored. In *Zurla*, our Supreme Court held that the delay was attributable to bureaucratic indifference and weighed it heavily against the State when the State failed to inquire as to the defendant's whereabouts, despite being on notice that he was demanding his right to a speedy trial, despite knowing of his whereabouts, and despite the simple nature of the charges against the defendant. *See Zurla*, 109 N.M. at 643, 789 P.2d at 591. "This demonstrates an unacceptable indifference by the prosecution to its constitutional duty 'to make a diligent, good-faith effort to bring a defendant to trial.'" *Id.* (quoting *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969)). Applying the principle in *Zurla* to the circumstances of the present case, we find the two-month delay between the indictment and service of the warrant to be more than a result of the State's negligence and we

weigh the two-month delay heavily against the State.

{16} After the arraignment, no activity occurred on the case until the nolle prosequi was mistakenly filed on October 8, 1998 in the district court cause. This event constitutes an additional three-month delay for which the State again offers no explanation. As the State has not met its burden of showing that this delay was reasonable, we determine this period weighs against it. *See Kilpatrick*, 104 N.M. at 445, 722 P.2d at 696 (holding that where the state offered no explanation for a nine-month delay in indicting the defendant that such delay should be weighed against the state).

{17} The next period of delay was created by the mistaken filing of the nolle prosequi on October 8, 1998 in the district court cause. Although the prosecutor took immediate steps to rectify the error once she discovered it, this error resulted in additional delay of Defendant's trial. While the misfiling may not be specifically attributable to the prosecutor, it is nonetheless the result of negligence on the part of the government and the delay caused thereby is attributable to the State. *See State v. Ziegenhagen*, 73 Wis.2d 656, 245 N.W.2d 656, 661 (1976) (holding that it is irrelevant whether the delay occurred in the clerk's office, the prosecutor's office, or the judiciary because the government as an institution is charged with the duty of assuring a defendant a speedy trial); *State v. Ledenko*, 87 Wash.App. 39, 940 P.2d 280, 282 (1997) (holding that a defendant's responsibility in complying with the speedy trial rule "should not include rectifying the superior court's own clerical error."). We thus weigh this period of delay against the State, though not heavily.

{18} The State asserts that the time period from October 29, 1998, when the State tendered a plea offer to Defendant, to January 11, 1999, when the State filed a Rule 5–604 petition for extension of time, was spent in plea negotiations which ultimately inured to Defendant's benefit. For this reason, the State argues that this two-and-one-half-month period should not be counted against it. It further contends that it sought an extension on January 11 because the State

658

and Defendant continued their plea negotiations. The State further contends that because Defendant took no position on the request, the period from January 11 to the scheduled plea hearing date on March 29, 1999, should not be weighed against the State. We do not weigh the period of plea negotiations against either party. *See State v. Eskridge*, 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502 ("[P]lea negotiations are themselves not a factor to be held against either party."); *but see State v. Lujan*, 112 N.M. 346, 350, 815 P.2d 642, 646 (Ct.App. 1991) (weighing unsuccessful plea negotiations against the state where the prosecution prolonged defendant's attempts to negotiate a plea bargain by delaying response to defendant's proposals). We instead weigh this five-month period of time neutrally between the parties.

{19} The final period of delay extends from March 29, 1999—the original plea hearing date, to June 21—the date when Defendant's plea was heard. On March 23, 1999, Defendant filed a motion to dismiss on speedy trial grounds. The State argues that as a result of Defendant's motion, the trial court was required to vacate the March 29 hearing. Defendant contends, however, that his motion was timely and the court's inability to schedule the hearing on the motion to dismiss before the original trial date should not be weighed against him. We weigh the delay caused by this scheduling conflict slightly against the State. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182 (stating that a relatively neutral reason for delay, such as overcrowded courts, should weigh slightly against the state). In so concluding, we note that the State filed a second Rule 5–604 petition for extension of time on March 7, 1999 to which Defendant objected. Because the petition for extension was still pending at the hearing on Defendant's motion to dismiss, the trial court did not rule on the motion until June 21, 1999—the date of Defendant's plea hearing. This occurred almost three months after the original plea hearing was scheduled.

{20} In conclusion, it appears as though thirteen months, out of the total eighteen-month delay for this simple DUI case, is attributable to the State—two of those thirteen months weighing heavily against the State. Only the five-month period constituting the plea negotiations weigh neutrally between the parties. We therefore conclude that, on balance, the delay factor weighs considerably, though not heavily, in favor of Defendant.

### III. *Assertion of the Right*

{21} We next assign weight to Defendant's assertion of his speedy trial right. *Tortolito*, 1997–NMCA–128, ¶ 15, 124 N.M. 368, 950 P.2d 811. Defendant asserted his right to a speedy trial at several stages of the proceedings. On July 17, 1998, approximately four days after his arraignment, defense counsel filed an Entry of Appearance, Request for Discovery, and Demand for Speedy Trial. While Defendant's demand was made early in the proceedings, the demand was perfunctory in nature and we assign it little weight. *Cf. Zurla*, 109 N.M. at 644, 789 P.2d at 592 (weighing the third factor heavily against the state where defendant made a pro se motion to be tried early while he was in custody of the Department of Corrections).

{22} Defendant again asserted his right six days before his trial was scheduled by filing a motion to dismiss on speedy trial grounds. This in itself is sufficient to weigh this factor in favor of Defendant. *See Lujan*, 112 N.M. at 350, 815 P.2d at 646 (holding that assertion of the right weighed in favor of the defendant because he timely filed a motion for speedy trial and motion to dismiss shortly after receipt of notice of the first trial setting); *Johnson*, 113 N.M. at 193, 824 P.2d at 333 (holding that the defendant adequately asserted his right to speedy trial by filing a motion to dismiss more than a year after his arrest.); *Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990) (weighing assertion of the right in favor of the defendant when he filed a speedy trial motion seven months after the indictment and five weeks before trial was scheduled to begin). Defendant's final assertion was his objection, based upon speedy trial grounds, to the State's second Rule 5–604 petition. We conclude that Defendant's multiple assertions of his right to a speedy trial weigh slightly against the State.

**IV.** *Prejudice to Defendant*

{23} Finally, we analyze whether Defendant was prejudiced as a result of the delay. *Tortolito,* 1997–NMCA–128, ¶ 18, 124 N.M. 368, 950 P.2d 811. This factor is analyzed in light of the interests that the speedy trial right is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense would be impaired. *Lujan,* 112 N.M. at 351, 815 P.2d at 647; *Zurla,* 109 N.M. at 644, 789 P.2d at 592. Defendant contends that the prejudice factor of the *Barker* test weighs heavily in his favor. While Defendant possesses the burden of production in showing that he was prejudiced by the delay, the burden of persuasion rests upon the State to show that his speedy trial rights were not violated. *See Johnson,* 113 N.M. at 194, 824 P.2d at 334.

**A.** *Pretrial Incarceration*

{24} It is undisputed in this case that Defendant was subject to restrictions by the metropolitan court upon being released on his own recognizance and by the district court upon posting a bond. Thus, although he was not subject to actual pretrial incarceration, restrictions were placed on his freedom. Defendant claims that he lost his employment as a result of the restriction placed upon him by both the metropolitan court and the district court. The restriction prevented him from leaving Bernalillo County without the permission of the court.

{25} "[T]he [S]ixth [A]mendment right to a speedy trial ... protects against interference with a defendant's ... disruption of employment." *Salandre,* 111 N.M. at 427, 806 P.2d at 567. While Defendant claims that the restrictions on his ability to travel caused him the loss of his job, the record indicates that he never actually held the job which he claims to have lost. He claims that he was a temporary employee of Baldridge Lumber Company at the time of his arrest for DUI. However, he could not indefinitely continue with his temporary position because of union restrictions. A letter from Defendant's employer indicates that Defendant was offered a permanent job after

he joined a union. Defendant claims to have turned down the job because it required him to travel outside the county, a task which he could not undertake due to the court-imposed restrictions. Unlike the defendant in *Johnson,* who lost his job as a parole officer after he was indicted, Defendant never accepted the position offered to him and, at most, it appears that he lost a job opportunity and not a job. *See Johnson,* 113 N.M. at 198, 824 P.2d at 338 (Hartz, J., dissenting) (concluding that great economic and psychological injury was suffered by the defendant when he lost his job).

{26} Defendant contends that he had to turn down the job offer because it involved "going on out-of-town trips." Yet, it appears that Defendant's inability to take advantage of the job opportunity was attributable to the fact that he did not have a valid driver's license. While Defendant urges that he could perform his job duties as a non-driving attendant, he does not point to, nor could we locate, any evidence in the record which supports such an assertion. The only evidence presented by Defendant in this case was the letter from his employer, indicating that he was offered a permanent position. The letter does not indicate what type of position Defendant was offered, nor does it indicate that Defendant could have performed his job duties without a valid driver's license.

{27} The record before us suggests that there were no restrictions set by the court that would have impacted Defendant's acceptance of the job offer and that it was the Defendant's choice not to take the position offered to him. We note the following comments made by the trial judge: "[Defendant] has not been incarcerated during the course of this so, therefore, in reference to his loss of employment upgrade, I have to agree with the [S]tate that there have been no conditions of release which would have eliminated a method or kind of work for [Defendant]. That's something he has a lot of control over." In this regard, we further observe that although the restriction required Defendant to attain the permission of the court before traveling outside the county, Defendant never sought such permission. The trial judge observed that an exception to the

restriction on travel is commonly given if it is in the course of one's employment. The judge stated, "In reference to the prejudice of ... Defendant in terms of his ability to travel, now, I know as a matter of course when I do conditions of release here that the exception—and I didn't see that exception, but one of the exceptions that I give in terms of not leaving the County of Bernalillo is unless it's in the course of your job or employment."

{28} Defendant also claims that his anticipation of mandatory jail time prevented him from accepting the position. The record discloses that his employer was ready and willing to hire him in November of 1998. Defendant fails to show how future jail time would prevent him from working while his case was pending. We thus affirm the trial judge's factual determination that Defendant has failed to demonstrate that the delay in this case resulted in his loss of employment or employment opportunity. *See id.* at 199, 824 P.2d at 339 (Hartz, J., dissenting) (holding that defendant's loss of employment would have occurred even if there had been no improper delay and ultimately that the prejudice factor to defendant was minimal).

{29} On balance, however, although we do not weigh the circumstances of Defendant's pre-trial restrictions and loss of job opportunity as heavily in his favor as he wishes us to do, we do weigh them in his favor because he lived under the restrictions for an unacceptably long period of time.

### B. *Anxiety and Concern and Impairment of Defense*

{30} Anxiety and concern often surround the filing of criminal charges. *Lujan,* 112 N.M. at 351, 815 P.2d at 647. The question for purposes of speedy trial analysis is whether such anxiety and concern, once proved, has continued for an unacceptably long period. *Id.* We conclude that they have in this case. Defendant also does not argue that he suffered any undue anxiety or concern, but that does not exhaust the speedy trial analysis. He also does not argue that his defense was impaired by the delay, nor is there any indication of such in the record. On balance, however, because of length of

the delay that is charged to the State in this simple case, we conclude that these factors do weigh considerably in Defendant's favor.

### CONCLUSION

{31} In sum, the length of delay was inordinately long for a simple DUI case. On balance, we weighed the reasons for delay significantly against the State, noting that out of the eighteen-month period between Defendant's initial arrest and his plea, only five months were weighed neutrally between the parties. We further noted that none of the delay weighed against Defendant. A significant and substantial portion of the delay was the result of an overburdened court docket and clerical errors made by court personnel. Although the kind of bureaucratic delay which occurred in this case may be understandable on a personal level, on a systematic level, it is intolerable. The State has an absolute constitutional responsibility to bring defendants to trial in a timely manner. If the State requires additional personnel or other resources, the State has the responsibility to request and secure those resources. It does not have the choice of holding defendants hostage to delays caused by systematic break-downs in the judicial process. As loathe as we are to release persons properly charged with serious crimes, the Constitution is a higher calling that both the State and this Court must heed.

{32} On balance, we conclude that Defendant's speedy trial rights were violated and thus reverse his conviction. We remand this matter to the district court for entry of an order of dismissal.

{33} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and LYNN PICKARD, Judge.