This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      **NO. 33,191**

**JOSE MARCOS MAESTAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Adam Greenwood, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    Defendant Jose Marcos Maestas appeals from his conviction on charges of armed robbery and conspiracy to commit armed robbery. On appeal, Defendant asserts three claims: (1) that his thirty-eight month incarceration pending trial constituted a violation of his right to a speedy trial under the United States and New Mexico Constitutions; (2) that the district court's failure to conduct a competency hearing in accordance with NMSA 1978, Section 31-9-1.1 (1993) constituted a violation of procedural due process; and (3) that proper application of NMSA 1978, Section 31-9-1.6 (1999) required dismissal of all charges. Because Defendant suffered no particularized prejudice, and the remaining *Barker* factors do not weigh heavily against the State, we hold that Defendant's right to a speedy trial was not violated under federal or New Mexico law. Similarly, the State's failure to comply with a statutorily imposed time line, which did not result in prejudice to Defendant's case, does not constitute a due process violation. Finally, we conclude that, if any error did occur in the application of Section 31-9-1.6, it was not properly preserved. Accordingly, we affirm.

**BACKGROUND**

{2}    Defendant, who has mild mental retardation, was charged with armed robbery, conspiracy to commit armed robbery, and tampering with evidence following a bank robbery that took place on April 12, 2010 in Melrose, New Mexico. The facts

underlying the allegations against Defendant are inconsequential and are therefore omitted.

{3}     Defendant was continuously incarcerated between April 12, 2010, the date of his arrest, and June 18, 2013, the date of his trial—a delay of more than thirty-eight months. To avoid a repetitious discussion of events that occurred during Defendant's pre-trial incarceration, we refrain from a comprehensive discussion of those events here and instead describe pertinent events as part of our speedy trial analysis below.

**RIGHT TO A SPEEDY TRIAL**

{4}     The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution. Neither federal nor state law attaches an exact temporal measurement to that right, which has been described by New Mexico appellate courts as "amorphous, slippery, and necessarily relative." *State v. Garza*, 2009-NMSC-038, ¶ 11, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). For this reason, analysis of an individual defendant's right to a speedy trial requires a particularized examination of the facts and circumstances related to the alleged violation. *Id.*

{5}     To conduct this examination, our Supreme Court adopted the four-factor balancing test created by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These factors include "(1) the length of the delay, (2) the reason

for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. A proper analysis requires that the factors be "considered together with such other circumstances as may be relevant." *Id.* ¶ 18 (internal quotation marks and citation omitted).

{6} Deciding whether a speedy trial violation has occurred requires "the district court to make certain factual determinations and legal conclusions." *Id.* ¶ 19 (internal quotation marks and citation omitted). We defer to the factual findings made by the district court "but we review the weighing and the balancing of the *Barker* factors de novo." *Id.* (alteration, internal quotation marks, and citation omitted). This Court is not, however, bound by factual findings that are clearly erroneous. *See Roybal v. Morris*, 1983-NMCA-101, ¶ 30, 100 N.M. 305, 669 P.2d 1100 ("On appeal, we are bound by the trial court's findings of fact unless they are demonstrated to be clearly erroneous[.]").

{7} While none of the *Barker* factors is dispositive, we are guided by the principle that, when a defendant fails to demonstrate particularized prejudice, we will not determine that a violation has occurred unless the other factors weigh heavily in favor of the defendant. *See State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252

4

P.3d 730 ("If [the d]efendant fails to make a particularized showing of prejudice, the other three factors must weigh heavily in [the d]efendant's favor.").

**Length of Delay**

{8}     The first *Barker* factor, length of delay, serves a dual purpose in a speedy trial analysis. The length of delay first serves as a "triggering mechanism[] requiring further inquiry into the *Barker* factors." *Garza*, 2009-NMSC-038, ¶ 21. If the length of the delay is found to be presumptively prejudicial, the delay is subsequently balanced as part of the speedy trial analysis. *Spearman*, 2012-NMSC-023, ¶ 20.

{9}     "A delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused[.]" *State v. Serros*, 2016-NMSC-___, ¶ 26, ___ P.3d ___ (No. 34,637, Nov. 12, 2015). A delay in a criminal prosecution becomes presumptively prejudicial if it exceeds established benchmarks for a case of its complexity: twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Garza*, 2009-NMSC-038, ¶ 48.

{10}    Defendant was continuously incarcerated and/or committed to the New Mexico Behavioral Health Institute (NMBHI) for the thirty-eight months between the date of his arrest and the date of his trial. A delay of this length is presumptively prejudicial

regardless of the complexity classification made by the district court and, therefore, triggers further application of the *Barker* factors. *Serros*, 2016-NMSC-___, ¶ 23.

{11} We defer to the finding of a district court as to the complexity of a case. *State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714. When, as here, the district court is ambiguous in its classification of the case, this Court must make an independent determination. *See State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477 (holding that an appellate court may determine complexity of a case in the absence of specific findings by trial court). In its order denying Defendant's second motion to dismiss, the district court found both that the case was complex *and* that the triggering period for presumption of prejudice was twelve months. These findings are legally incompatible.

{12} We conclude that this was a simple case. In *State v. Laney*, this Court noted that "simple cases require less investigation and tend to involve primarily police officer testimony during the trial[,]" while intermediate cases "seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (internal quotation marks and citation omitted). Defendant's trial was concluded in one day and required testimony from only eight witnesses, four of whom were police officers. The charges—armed robbery, conspiracy to commit armed robbery,

and tampering with evidence—are not particularly complex. The physical evidence consisted solely of photographs and physical items recovered from the crime scene and pursuit. There was no scientific evidence or expert testimony presented to the jury.

{13} As a simple case, the period of Defendant's incarceration exceeded the presumptively prejudicial period by twenty-six months. To determine the extent to which the length of delay will weigh against the State, "we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim[.]" *Coffin*, 1999-NMSC-038, ¶ 59 (internal quotation marks and citation omitted); *see Garza*, 2009-NMSC-038, ¶ 24 ("[T]he greater the delay the more heavily it will potentially weigh against the [s]tate."); *State v. Stock*, 2006-NMCA-140, ¶ 14, 140 N.M. 676, 147 P.3d 885 ("Where a case is simple and relatively easy to prosecute, delay will weigh more heavily against the [s]tate because there is less excuse for delay.").

{14} Review of our speedy trial jurisprudence in cases of varying complexity reveals that a thirty-eight month delay for a simple case should weigh heavily against the State. *See, e.g.*, *Stock*, 2006-NMCA-140, ¶¶ 15, 18 (weighing a three-and-one-half year delay in a simple case heavily against the state); *State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing a twenty-three month delay in a simple case heavily

against the state); *State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 (weighing a twenty-seven month delay in an intermediate case "moderately to heavily" against the state); *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19-20, 327 P.3d 1129 (weighing a thirty-six month delay in a complex case heavily against the state). Because the state has a responsibility to "bring a defendant to trial in a timely manner[,]" we discern no reason not to weigh the thirty-eight month delay in the present case heavily against the State. *Stock*, 2006-NMCA-140, ¶ 17.

**Reasons for Delay**

{15}     The second *Barker* factor requires analysis of the reason for the delay, with "different weights . . . assigned to different reasons for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). It is recognized that some delay is inherent to the pre-trial process. When a case "moves toward trial with customary promptness[,]" that period of time is weighed neutrally against the parties. *State v. Wilson*, 2010-NMCA-018, ¶ 34, 147 N.M. 706, 228 P.3d 490 (internal quotation marks and citation omitted). Other pre-trial circumstances also require that resulting delay be weighed neutrally. These circumstances include continuances necessitated by unavailable witnesses, *see Spearman*, 2012-NMSC-023, ¶ 25, and recusal by the presiding judge. *See State v. Benavidez*, 1999-NMCA-053, ¶ 35, 127

N.M. 189, 979 P.2d 234, *rev'd on other grounds by* 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274.

{16} Defendant's pre-trial incarceration lasted more than thirty-eight months. However, a total of three hundred twenty-seven days, or approximately eleven months, are attributable to pre-trial procedure that was moving with customary promptness. *See Wilson*, 2010-NMCA-018, ¶ 34. Additionally, twenty-four days are attributable to an unavailable witness, and twenty-one days are attributable to the recusal of Judge Donna J. Mowrer. As such, this time weighs neutrally against the parties, and the remaining delays, totaling approximately twenty-six months, must be allocated between Defendant and the State.

*Delays Weighing Against Defendant and the State*

{17} Certain principles guide the allocation of delay between criminal defendants and the state. Significantly, for the purposes of this case, delays resulting from competency proceedings and treatment of a criminal defendant to competency are weighed against the defendant, so long as it can reasonably be said that the delay benefitted the defendant. *See Stock*, 2006-NMCA-140, ¶ 19 ("This general rule makes sense because to the extent delays are for a defendant's benefit, it would not be fair to hold them against the state."). Additionally, administrative delays weigh against the

state, *see Spearman*, 2012-NMSC-023, ¶ 25, while delays resulting from the excusal of a judge weigh against the requesting party. *See Benavidez*, 1999-NMCA-053, ¶ 35.

**{18}** On May 24, 2010, Defendant requested a forensic evaluation to determine his competency to stand trial. Upon receipt of Defendant's competency evaluation, the district court scheduled a competency hearing for November 18, 2010. The period of time between May 24, 2010 and November 18, 2010, a total delay of five months and twenty-five days, weighs against Defendant. *See Stock*, 2006-NMCA-140, ¶ 19 (weighing competency proceedings against the defendant).

**{19}** Prior to his November 18, 2010 competency hearing, Defendant requested a continuance due to the unavailability of counsel. A second competency hearing was scheduled for December 20, 2010. The period of time between November 18, 2010 and December 20, 2010, a total delay of one month and two days, weighs against Defendant. *See Spearman*, 2012-NMSC-023, ¶ 26 (weighing continuances against the requesting party).

**{20}** Defendant's second competency hearing, scheduled for December 20, 2010, was vacated because the Curry County Sheriff's Department failed to transport Defendant to the hearing. No transport order appears in the record, but, in an order denying Defendant's first motion to dismiss, the district court ruled that the State was responsible for transporting Defendant and failed to do so. In the same order, the

district court ruled that the State was not responsible for "delays in brin[g]ing this matter to hearing[.]" It is possible that the district court was taking a broad view of the case to date, but a factual finding that the State was not responsible for the specific delay caused by the failure to transport is clearly erroneous. Administrative delay weighs against the state, although not heavily. *See id.* ¶ 25 ("Negligent or administrative delay is weighed against the [s]tate, since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant[.]" (internal quotation marks and citation omitted)). The transportation of criminal defendants from state facilities to hearings is an administrative function. *See* NMSA 1978, § 4-41-2 (Kearny Code, Sheriffs, § 4, 1846) ("The sheriff shall . . . cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them."). Because this hearing was vacated, Defendant had a third competency hearing scheduled for April 25, 2011. The period of time between December 20, 2010 and April 25, 2011, a total delay of four months and five days, weighs against the State. *See Spearman*, 2012-NMSC-023, ¶ 25 (weighing administrative delay against the state).

{21}    On April 25, 2011, at his third scheduled competency hearing, Defendant was determined to be incompetent to stand trial and was committed to NMBHI for

treatment to competency. Defendant received treatment and was determined to be competent to stand trial on November 15, 2011. After his release from NMBHI, a fourth competency hearing was scheduled for January 10, 2012.[1] The period of time between April 25, 2011 and January 10, 2012, a total delay of eight months and sixteen days, weighs against Defendant. *See Stock*, 2006-NMCA-140, ¶ 19 (weighing competency proceedings against defendants).

{22} On February 3, 2012, Defendant notified the court of, and requested transportation to, an additional competency evaluation with Dr. Maxann Shwartz. This evaluation was scheduled for March 29, 2012. The time period between February 3, 2012 and March 29, 2012, a total delay of one month and twenty-six days, weighs against Defendant. *See id.* (weighing competency proceedings against defendants).

{23} The events occurring between March 29, 2012 and July 10, 2012 are unclear to this Court. Defendant's competency evaluation, scheduled for March 29, 2012, did not occur due in part to the Curry County Sheriff's Department's refusal to transport Defendant to the appointed evaluation location, and in part to Defendant's refusal to

---

[1]On May 25, 2011 Defendant filed a motion requesting an interlocutory appeal of the district court's denial of Defendant's motion to dismiss. This appeal was denied by this Court on August 16, 2011. Because the time period encompassed by the interlocutory appeal falls entirely within the time period Defendant was committed to NMBHI, we decline to discuss the speedy trial implications of Defendant's interlocutory appeal.

conduct the evaluation at the jail. The encounter between Defendant's attorneys and medical evaluators and the sheriff's department is memorialized in a letter to the court that was attached to a motion to release Defendant from custody for evaluation. There is no indication in the record as to whether the motion was granted, or whether the evaluation ever occurred, but the next substantive pleading was a motion filed by Defendant on July 10, 2012, stipulating to competency to stand trial.

{24}    It is unclear what, if any, delaying effect the actions of the Curry County Sheriff's Department had on Defendant's eventual stipulation to competency on July 10, 2012. However, in its March 27, 2013 order denying Defendant's second motion to dismiss, the district court noted a delay associated with problems in finding a proper location for an independent evaluation but declined to specifically conclude that this delay was attributable to the State. In the absence of clear evidence as to the events that took place between March 29, 2012 and July 10, 2012, we defer to the district court's findings of fact and conclusions of law. As such, the delay between these dates is attributable to Defendant's ongoing competency proceedings and the time period between March 29, 2012 and July 10, 2012, a total delay of three months and eleven days, weighs against Defendant. *See id.* (weighing competency proceedings against defendants).

13

**{25}**   The district court entered an order finding Defendant competent to stand trial on July 24, 2012. Defendant was then arraigned on September 10, 2012. Judge Mowrer, the district judge initially assigned to the case, recused herself. After Judge Mowrer's recusal, each party also excused one judge. The State's excusal of Judge Teddy L. Hartley resulted in a delay of eighteen days. Defendant's excusal of Judge Stephen K. Quinn resulted in a delay of nineteen days. Delays associated with excusals of judges weigh against the requesting party. *Benavidez*, 1999-NMCA-053, ¶ 35. Following the assignment of Judge Drew D. Tatum on November 7, 2012, the case moved towards trial without further delay attributable to either party.

**{26}**   When we sum the total time of delay attributable to each party, we see that Defendant was responsible for six hundred forty-seven days, or approximately twenty-one and one-half months, while the State was responsible for one hundred forty-four days, or approximately four and one half months.[2] Because the delays attributable to the State were either administrative in nature, or resulted from the excusal of a judge, these delays weigh against the State, but only slightly.

**Assertion of the Right**

---

[2]As discussed above, delays amounting to approximately twelve months are not attributable to either party.

{27} The third *Barker* factor requires evaluation of Defendant's assertion of the right to a speedy trial. Our appellate courts "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. Defendant first asserted his right by motion on May 10, 2010. Defendant subsequently filed a motion to dismiss on speedy trial grounds on January 4, 2013.

{28} Defendant argues that his motion to dismiss for failure to hold a timely competency hearing serves as an additional assertion of the right to a speedy trial. *See* § 31-9-1.1 (requiring that the district court shall hold a competency hearing within thirty days of notification that a forensic evaluation is complete). Defendant does not direct this Court to any authority supporting this argument. As such, we presume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Defendant is therefore credited with asserting his right to a speedy trial on two occasions.

{29} Defendant's assertions parallel those discussed by this Court in *State v. Valencia*, 2010-NMCA-005, 147 N.M. 432, 224 P.3d 659. In *Valencia*, the defendant entered a demand when he first appeared in magistrate court and then waited nineteen months before reasserting the right. *Id.* ¶ 27. On those facts, this Court held that the assertions weighed slightly in the defendant's favor.

{30} Defendant's initial speedy trial demand accompanied his counsel's entry of appearance. Perfunctory demands for a speedy trial are given limited weight. *State v. Marquez*, 2001-NMCA-062, ¶ 21, 130 N.M. 651, 29 P.3d 1052. Two years and seven months then elapsed before Defendant's next assertion of his right to a speedy trial; an assertion that occurred only after it became evident that Defendant would proceed to trial. Defendant's assertions are no more than adequate. *See, e.g.*, *Spearman*, 2012-NMSC-023, ¶¶ 32-33 (explaining that two motions, including a demand filed shortly after charges were filed and a subsequent motion to dismiss, were "adequate, though certainly not impressive or aggressive"). As such, this factor weighs against the State only slightly.

**Prejudice**

{31} The right to a speedy trial is designed to protect against: (1) oppressive pre-trial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense. *Id.* ¶ 34 (citing *Barker*, 407 U.S. at 532). Generally speaking, a defendant has the burden of demonstrating particularized prejudice. *Garza*, 2009-NMSC-038, ¶ 39. However, when "the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.*

16

**{32}** There can be little doubt that Defendant's thirty-eight month pre-trial incarceration is facially oppressive. *Cf. id.* ¶ 35 ("It cannot be denied that two-and-one-half years of pretrial incarceration . . . is very substantial prejudice[.]" (alteration, internal quotation marks, and citation omitted)). However, because Defendant "acquiesced" in more than twenty-one months of the delay, we cannot say that the length of Defendant's incarceration alone allows us to depart from our general rule prohibiting "speculat[ion] as to the impact of pretrial incarceration" in the absence of a demonstration of actual prejudice. *Id.* ¶¶ 35, 39.

**{33}** Defendant raises two arguments asserting actual prejudice caused by his pre-trial incarceration. First, Defendant argues that the thirty-eight months in jail were oppressive given impacts on his life, family relationships, and income. However, our appellate courts have held that these disruptions are inherently connected with incarceration. *See Laney*, 2003-NMCA-144, ¶ 29 ("Some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial."). While Defendant's appellate briefing alleges that this disruption was oppressive, our review of the record reveals no evidence indicating that Defendant suffered undue prejudice as a result of his incarceration. *Id.* ("[W]e emphasize that the focus of our inquiry in a speedy trial analysis is on undue prejudice."). Defendant offered no witnesses or other evidence on this subject at trial. *See Spearman*, 2012-NMSC-023, ¶ 39

("Allegations of counsel are not generally considered evidence."). Because Defendant does not demonstrate that undue prejudice resulted from the length of his pre-trial incarceration, this factor does not weigh in favor of Defendant.

{34}    Second, Defendant argues that his mild mental retardation caused a level of anxiety that is greater than the average person would suffer under similar circumstances. Again, these allegations come only in the form of argument by counsel and were not supported by evidence or witnesses in district court. *See id.* ("[The d]efendant should have offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations[.]"). Defendant has not cited medical or legal authority for the proposition that incarceration creates a presumption of increased anxiety among those with diminished mental capacity. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."); *see also Stock*, 2006-NMCA-140, ¶ 37 (rebutting the presumption that incarceration necessarily leads to undue anxiety in those with diminished mental capacity). Defendant also argues that the State's failure to provide prescribed medication led to increased anxiety and caused prejudice to Defendant. While this argument is generally supported by record evidence, the record also contains a district court order, dated October 18, 2010, that clarified Defendant's medication management. This order was entered prior to the

twelve-month threshold in which a *Barker* analysis is triggered in a simple case. No subsequent motions related to medication management appear in the record. As such, Defendant cannot demonstrate that increased anxiety resulting from medication mismanagement was causally related to the delay in moving this case to trial. Because Defendant fails to demonstrate that his pre-trial incarceration resulted in levels of anxiety sufficient to cause undue prejudice, this factor does not weigh in favor of Defendant.

{35} Defendant does not argue that his defense was impaired by the length of his incarceration. As such, we do not address this issue but conclude that this factor does not weigh in favor of Defendant. *See State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 10, 144 N.M. 222, 185 P.3d 1072 ("We do not address arguments not raised on appeal.").

**Balancing the *Barker* Factors**

{36} To summarize, we conclude that (1) the length of the delay weighs heavily against the State, (2) the reasons for the delay weigh slightly against the State, (3) the assertion of the right weighs slightly against the State, and (4) the demonstration of prejudice weighs against Defendant. Because Defendant failed to demonstrate particularized prejudice resulting from delays in this case, and the other factors do not weigh heavily in Defendant's favor, Defendant's right to a speedy trial has not been

19

violated. *See Parrish*, 2011-NMCA-033, ¶ 32 ("If [the d]efendant fails to make a particularized showing of prejudice, the other three factors must weigh heavily in [the d]efendant's favor.").

**FAILURE TO CONDUCT A COMPETENCY HEARING IN ACCORDANCE WITH A MANDATORY TIMELINESS REQUIREMENT**

{37}    Defendant's second argument is that the district court's failure to conduct a competency hearing within thirty days of the completion of Defendant's forensic evaluation was error requiring dismissal.

{38}    Section 31-9-1.1 states, in pertinent part,

> A hearing on the issue of the competency of an incarcerated defendant charged with a felony shall be held by the district court within a reasonable time, but in no event later than thirty days after notification to the court of completion of the diagnostic evaluation.

Since the statute imposes a mandatory deadline requiring that a competency hearing be conducted within the time period provided, we must determine whether dismissal is the appropriate remedy. *Redman v. Bd. of Regents of the N.M. Sch. for the Visually Handicapped*, 1984-NMCA-117, ¶ 17, 102 N.M. 234, 693 P.2d 1266 ("The use of the word 'shall' ordinarily imposes a mandatory requirement."). Dismissal is required only when a mandatory timeliness requirement is jurisdictional or if the delay from the failure to comply prejudiced the defendant. *N.M. Dep't of Health v. Compton*, 2000-NMCA-078, ¶ 12, 129 N.M. 474, 10 P.3d 153.

20

**Jurisdiction**

{39} Jurisdiction is implicated when the requirement at issue is "essential to the proper operation of the statute." *Id.* ¶ 13. *Compton* provides an illustration of a non-jurisdictional mandatory timeliness requirement. In that case, the defendant claimed that NMSA 1978, Section 43-1-11(A) (1989) mandated a hearing within seven days of an involuntary commitment. *Compton*, 2000-NMCA-078, ¶ 9. This Court agreed, but held that "the mandatory statutory requirement . . . does not affect the essential power of the district court to adjudicate the issue before it." *Id.* ¶ 15.

{40} The present case is directly analogous. The mandatory timeliness requirements imposed by Section 31-9-1.1 do not implicate the district court's authority over the case. Instead, we presume that the thirty-day requirement is intended to provide a procedural protection for defendants who may lack the capacity to zealously advocate their legal position. Since the hearing deadline imposed by Section 31-9-1.1 is non-jurisdictional, dismissal was required only if Defendant was prejudiced by the delay.

**Prejudice**

{41} We are unable, on the record before us, to determine any prejudice suffered by Defendant as a result of the district court's failure to hold a competency hearing within the mandatory time line required by Section 31-9-1.1. Defendant's appellate brief makes no specific argument as to the existence of prejudice related to the district

21

court's failure to comply with Section 31-9-1.1. We assume that Defendant intended to argue that the delay resulting from the failure to conduct his competency hearing within thirty days created a snowball effect leading to the other delays discussed and analyzed in our speedy trial analysis above. However, we have previously determined that Defendant did not demonstrate that particularized prejudice resulted from the delay in his trial. Because Defendant fails to argue the existence of specific prejudice related to the district court's failure to comply with Section 31-9-1.1, we decline to surmise. *See Hector C.*, 2008-NMCA-079, ¶ 10 ("We do not address arguments not raised on appeal.").

**INVOLUNTARY CRIMINAL COMMITMENT ABSENT A FINDING OF DANGEROUSNESS**

{42} Defendant's final argument is that the district court's finding that Defendant suffers from mental retardation precluded the court from involuntarily committing Defendant to NMBHI absent a finding of dangerousness. The requirement of a finding of dangerousness is contained in the New Mexico Mental Illness and Competency Code (NMMIC), NMSA 1978, §§ 31-9-1 to -1.5 (1988, as amended through 1999).

{43} Generally speaking, criminal defendants found incompetent to stand trial are subject to the NMMIC. However, certain criminal defendants whose incompetency to stand trial is due to mental retardation are instead subject to Section 31-9-1.6.

22

{44} Section 31-9-1.6 provides that "[i]f the court finds by a preponderance of the evidence that the defendant has mental retardation . . . the department of health shall perform an evaluation to determine whether the defendant presents a likelihood of serious harm to himself or a likelihood of serious harm to others." Section 31-9-1.6(B). As such, a defendant found to have mental retardation "shall" be involuntarily committed for the express purpose of determining whether the defendant "presents a likelihood of serious harm to himself or . . . others." *Id.*

{45} Defendant first asserted that his incompetency to stand trial was based upon mental retardation in a motion to dismiss filed January 20, 2011. In this motion, Defendant argued that (1) defendants with mental retardation are subject to Section 31-9-1.6, and, by implication, that (2) Section 31-9-1.6 applied to this case. Defendant filed a second motion to dismiss on April 22, 2011, in which he made an alternative argument that his due process rights under the NMMIC had been violated. In this motion, Defendant continued to assert that his incompetency was based upon his mental retardation. When these motions were filed, the district court had not yet made any determination as to competency or mental retardation.

{46} At Defendant's competency hearing on April 25, 2011, the district court entered a series of findings, including that (1) Defendant was not competent to stand trial, (2) Defendant has mental retardation, and (3) it was unclear whether Defendant could be

23

treated to competency. As a result of these findings, the district court ordered that Defendant be involuntarily committed to NMBHI for the purpose of determining whether Defendant could be treated to competency.

{47} After the district court entered its commitment order, the following exchange occurred:

Defense Counsel: Your Honor, if the court is going to make a ruling to send him to [NMBHI], we already have an order from July 13, if we could have dangerousness assessed at that time because we don't know what the outcome's gonna be on the competency and this has already been delayed significantly despite . . . our best efforts to move it through the courts.

Prosecution: Judge, pursuant to 31-9-1.6(B), then the Department of Health shall perform an evaluation to determine whether he presents a likelihood of dangerousness once you make that commitment to treat towards competency. And if she'll just put that in the order . . .

Court: I think if we include that we kill two birds with one stone.

Defense Counsel: And we have a previous order from July 13 that he is supposed to be assessed for dangerousness.

Court: The court will so order.

Defense counsel drafted an order expressly noting that Defendant was being committed under Section 31-9-1.6 for the dual purposes of determining (1)

24

dangerousness, and (2) the ability to treat Defendant to competency. The order was signed by the district court.

**{48}** During the course of pre-trial proceedings, Defendant's motions applied provisions of both the NMMIC and Section 31-9-1.6, depending upon which legal principles most readily advanced his claim for dismissal. On appeal, Defendant continues to offer arguments conflating the NMMIC with Section 31-9-1.6.[3] A defendant is not entitled to adjudication under both the NMMIC and Section 31-9-1.6. *See State v. Trujillo*, 2009-NMSC-012, ¶ 39, 146 N.M. 14, 206 P.3d 125 ("Section 31-9-1.6 is, by itself, not a comprehensive legislative scheme. It is critical that, where Section 31-9-1.6 is silent, the previously applicable law, the NMMIC, applies."). Instead, a defendant is either properly subject to the application of Section 31-9-1.6, or a defendant is not.

**{49}** Given the lack of clarity as to the exact authority on which Defendant is basing this appeal, we interpret his argument to be that the district court erred in applying Section 31-9-1.6 and instead should have made a specific finding of dangerousness

---

[3]For example, Defendant's brief in chief states "Dr. Fink did not evaluate for dangerousness and the trial court did not make a specific finding as to dangerousness, as required by 31-9-1.2(B) for a commitment to NMBHI. In fact, the trial court could not have made a finding of dangerousness, as the only crimes that would make a mentally retarded defendant dangerous [under Section 31-9-1.6] are first degree murder, first degree criminal sexual penetration, criminal sexual contact of a minor or arson." This argument conflates the two different statutory schemes.

under Section 31-9-1.2 prior to ordering an involuntary commitment. Defendant failed to preserve this error.

{50} This Court "will consider only such questions as were raised in the lower court." *State v. Gomez*, 1997-NMSC-006, ¶ 14, 122 N.M. 777, 932 P.2d 1 (internal quotation marks and citation omitted). When an objection is offered at trial, it "must be made with sufficient specificity to alert the mind of the trial court to the claimed error and it must be made timely." *State v. Riley*, 2010-NMSC-005, ¶ 24, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426. Defendant offered no objection to the court's order of involuntary commitment to NMBHI at his competency hearing. Despite offering various legal theories as to why release from incarceration was necessary during the pre-trial proceedings, Defendant never objected to the application of Section 31-9-1.6 to his case.

{51} Instead, Defendant repeatedly asserted that he has mental retardation and that his incompetency to stand trial was due to his mental retardation. Defendant failed to object to, and in fact drafted, the commitment order that declared him to have mental retardation and authorized his commitment under Section 31-9-1.6.

{52} Despite Defendant's assertions to the contrary, Section 31-9-1.6 does not require a finding of dangerousness prior to commitment. *See* § 31-9-1.6(B). As such,

we cannot agree with Defendant's argument that his mental retardation necessitated a specific finding of dangerousness prior to involuntary commitment. Any argument that Section 31-9-1.6 was improperly applied to Defendant was not properly preserved at trial, was not argued to be fundamental error on appeal, and is not considered by this Court.

**CONCLUSION**

{53}     For the foregoing reasons, Defendant's convictions are affirmed.

{54}     **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**LINDA M. VANZI, Judge**